Frances HURST, Plaintiff-Appellant,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant-Appellee.

No. 83–3066.

United States Court of Appeals, Sixth Circuit.

Submitted Dec. 6, 1983.

Decided Jan. 12, 1984.

William Culbert, Culbert & Adkins, Toledo, Ohio, Frank J. Neff, Barkan & Neff Co., L.P.A., Columbus, Ohio, for plaintiff-appellant.

Patrick J. Foley, Asst. U.S. Atty., Toledo, Ohio, Michael J. Zarski, Asst. Regional Attorney, Dept. of H.H.S., Chicago, Ill., for defendant-appellee.

Before EDWARDS, Circuit Judge, and PHILLIPS and PECK, Senior Circuit Judges.

PER CURIAM.

Frances Hurst is a now 57-year-old woman who had as of her last employment worked 27 years at the Libby glass division of Owens-Illinois. Her job was as a selector and packer of glassware in a glass factory.

Her claim is that she is now disabled within the meaning of the Social Security Act as a result of hypertension, cerebrovascular accident, cervical spondylosis and coronary artery disease.

There are medical reports from claimant's treating physician, Dr. Thomas G. Welch. The first is dated October 18, 1979 and reads as follows:

FINAL DIAGNOSIS:

1) Hypertension.
2) Cephalgia of uncertain etiology, possibly muscle spasm headache.
3) Abnormal EEG, perhaps due to old cerebrovascular accident.

Operations: None

Consultations: Dr. Mareska of neurology. Hospital Course: This fifty-three year old female came in with sudden onset of headache with hypertension. The hypertension easily resolved with bed rest. She was seen in consultation by Dr. Mareska of neurology, who thought this was a muscle spasm headache. The EEG was abnormal showing a left focus, and the patient subsequently related that there may have been a previous cerebrovascular accident in the past with some residual sensory impairment. Skull x-rays were normal. Cervical spine showed mild cervical spondylosis at the C5–6 level. CT brain scan was normal. Chest x-ray was normal. CPO and OPG-both carotids were within normal limits. Dr. Mareska felt it was okay for the patient to go home now on the following medications.

1) Fiorinal tabs 2 po q 4 h.
2) Vistaril 50 mg. po q 4 h.
3) Heat and exercise to the neck.

She will return for a repeat EEG in three months, and will also be followed up in the office.

The second is dated February 14, 1980 and reads as follows:

Frances Hurst was recently in the hospital in October 1979 with a final diagnosis of hypertension, cephalgia of uncertain etiology probably due to muscle spasm headaches, and an abnormal EEG probably due to old cerebrovascular accident. This was confirmed by a neurologist. Cervical spine x-rays showed mild cervical spondylosis and CT brain scan was normal. She was treated with Fiorinal and Vistaril and it was planned to repeat the EEG in three months with Dr. Mareska. Cardiac catheterization was performed in 1972 by Dr. Geraci and it showed normal coronary arteries. She had previously been admitted for pulmonary emboli and was treated with Coumadin. This occurred in March 1978. A repeat cardiac cath was performed in May 1979 showing left ventricular dysfunction, but normal coronary arteries and a copy of that report will be enclosed as well as a copy of a recent cardiogram. The cardiogram has showed abnormalities of ST depression all along and that was the reason for the cath. There was an increase in the left ventricular end-diastolic pressure, but again no coronary obstruction. Her main problem now appears to be sudden elevations of blood pressure with severe headaches. She is currently on Fiorinal and Vistaril as well as physical therapy for the neck. The patient has atypical chest discomfort which I do not feel is angina and there has been no previous infarction. Fundiscopic findings are normal, renal function

is normal, visual acuity is normal. Stress testing has not been done because of the angiography. The patient does not have dyspnea, PND or peripheral edema. The headaches occur suddenly, are severe in nature, sometimes associated with vomiting, and occur in the occipital area. The EEG was abnormal during the previous hospitalization as mentioned, compatible with a previous scar and again the neurologist's opinion was that it was due to a previous cerebrovascular accident.

I feel her main problem at this time is the severity of the headaches which may be related to the previous CVA and the elevated paroxysms of blood pressure. She seems to be disabled because of the recurrence of these.

The third statement of the attending physician reads as follows:

Since this patient is totally and permanently disabled, our office will not complete this form on a monthly basis. We will be happy to complete it quarterly.

It appears to this court that claimant presented medical evidence for her treating physician which was specific and positive as to her disability. The Administrative Law Judge and subsequent reviewing authorities largely ignored Dr. Welch's expressed opinions. The ALJ indeed relied upon his interpretation of an examining physician, Dr. Atilla M. Yetis. His report, however, contains the following information concerning claimant:

1) Coronary artery disease, by history;
2) Hypertension;
3) Meniere's syndrome;
4) Headaches.

Dr. Yetis' opinion also contains the following:

OPINION: This claimant most likely has a significant degree of coronary artery disease. Her overall ability to perform functions is markedly reduced due to this problem. The changes which occurred on the post exercise tracings are significant to indicate that she does have coronary artery disease. She is limited to activities such as sitting, standing and short distance, slow walking. She could climb a few steps at a time. I feel she is able to do most of the sedentary functions, but she is unfit definitely for light, medium, or strenuous physical activities. Her upper extremities appear intact and I feel she could do nonsustained fine and coarse manipulations within reasonable amounts with the understanding that her overall functional capacity is markedly reduced. See page 3 for further physical capacities evaluation.

Claimant's undisputed testimony is that she was not allowed to work at her previous job at Libby because the company physician told her she could not while taking the medication prescribed for her.

At the hearing before the ALJ, claimant testified that she took the following medications: nitroglycerin for chest pains, about once a month; Inderal for her elevated blood pressure, four tablets per day; Vistaril for her headaches, four tablets per day; Fiorinal for nerves and headaches when she has a headache; Valium for nerves, one to three times per day; a medication to relieve excess body fluid which causes swelling in her hands, face, and legs; and aspirin to relieve lower back pain caused by strenuous physical activity.

The legal issue in this case is whether there is substantial evidence to support the Secretary's denial of social security benefits. On the whole record we hold there is not. We also hold that there is substantial evidence that appellant is disabled from her previous work and any substantial gainful employment.

In this Circuit greater weight is given to the opinions pertaining to disability of treating physicians than to the reports of physicians who are employed for an examination in preparation for a social security hearing. Further, it is the view of this Circuit as expressed in *Allen v. Califano,* 613 F.2d 139 (6th Cir.1980), and cases cited therein, that disability may be established by a claimant suffering from a variety of medical problems, no one of which might be sufficiently disabling to prevent substantial

gainful employment but when taken together have that result.

The judgment of the District Court in this case is reversed. The case is remanded to the District Court for remand to the Secretary for the allowance of benefits.