805 F.2d 1033
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Billie BOWLES, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 85-3958.
 United States Court of Appeals, Sixth Circuit.
 Oct. 16, 1986.
 
 Before MARTIN, GUY and NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Billie Bowles appeals the district court's decision affirming the denial of Social Security disability benefits. Bowles filed her application for disability benefits on August 4, 1982, claiming to have been disabled from May 13, 1980. Her application was denied both initially and on reconsideration. She then filed a request for a hearing which took place on May 23, 1983. The administrative law judge denied benefits, finding that Bowles was able to perform her past relevant work, and the Appeals Council affirmed the decision. The United States Magistrate recommended that the Secretary's decision be affirmed, and the district court adopted that recommendation.
 
 
 2
 Bowles argues that the Secretary failed to consider the combination of her other impairments in addition to her obesity and that the decision was therefore not based on substantial evidence. Considering the record as a whole, we conclude that the Secretary's findings that Bowles was able to perform her past relevant work were supported by substantial evidence and not rebutted by Bowles. They must therefore be upheld. Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir.1981).
 
 
 3
 Bowles was born on September 22, 1930 and at the time of her hearing was fifty-two years old. She has an eighth grade education. She had last worked on May 3, 1979 as a molding machine operator, when she was laid off due to lack of work. Before that she had been a laborer in a bakery and a machine operator elsewhere. Bowles received unemployment compensation between the time she was laid off and May 1981.
 
 
 4
 Bowles alleges disability since May of 1980 because of impairments including heart problems, tumors, throat and breathing problems, swelling and pain in her legs, arthritis and chest pain. At the time of the hearing she was approximately 5'2"' tall (the record evidences height between 5'1"' and 5'3"") and roughly 250 pounds. In fact, her greatest problem appears to be her extreme obesity and at least one examining physician has opined that her shortness of breath and poor tolerance for exercise may be due to her obesity. At the hearing Bowles stated that she could walk one-half block before being out of breath, could not climb stairs and that because of her vocal cord paralysis she had trouble talking some mornings. She testified that currently she was able to cook, maintain her house, do the laundry, and go to the grocery, all with some help from her daughter, and that she spent time sewing and growing flowers in pots.
 
 
 5
 The medical reports are as follows. On August 1, 1979 Bowles was admitted to the hospital because of choking spells, coughing, spitting up blood, lumps in her throat and rectal bleeding which had bothered her for the previous week and a half. At that time she complained that her voice came and went and that she had intermittent headaches. She was given medication and a skin test for tuberculosis was positive. Further examination revealed she had left true vocal cord paralysis. Following a consultation in the hospital on August 4, 1979 she insisted on being discharged and signed herself out contrary to her doctor's advice.
 
 
 6
 On March 31, 1981 Bowles was treated as a hospital out-patient for excision of multiple lipomata on her abdomen. She entered the hospital again on April 27, 1982 because of vaginal bleeding during the previous four weeks, lower abdominal cramps and blood clots. She was discharged on April 30, 1982, to be readmitted May 3, 1982 for surgery. She then underwent an attempted D & C, a total abdominal hysterectomy and bilateral salpingo-oophorectomy. Bowles did well post-operatively and was discharged from the hospital on May 11, 1982 with instructions not to lift anything heavy for the next month. Though she states that she has had hot and cold flashes since her hysterectomy, she suffers no severe residual effects from these procedures.
 
 
 7
 Bowles' vocal cord paralysis was treated surgically by Dr. William Thornell in January of 1981. She was given a local anesthetic and the vocal cord was injected with Teflon. Dr. Thornell discussed her condition in a report dated August 12, 1981 in which he stated that he had last examined her on July 21, 1981 and that she had paralytic dysphasia with a good prognosis.
 
 
 8
 Dr. Omer Jasper reported that Bowles had had chest pains since August of 1979, that her legs swelled from too much sodium and that she had no phlebitis.
 
 
 9
 In a report dated September 18, 1982 Dr. Henry Hon, a consultative physician, stated that Bowles had a normal gait with no need for ambulatory aids, that she was able to grasp and manipulate with both hands without difficulties, her hip flexion was normal, she could straight leg raise to 60 degrees without difficulty, had full range of motion of both knees, and a musculoskeletal examination revealed no evidence of heat, redness, swelling or synovial thickening of the peripheral joints. Dr. Hon indicated that her poor exercise capacity may be related to her extreme obesity. Though he gave no indication that she was unable to work, he did indicate that she had degenerative joint disease. He listed her current medications as Darvocet N-100, Nitrostat, Tylenol, and Sorbitrate. He also noted that she may have arteriosclerotic heart disease and that her chest pain, though somewhat atypical, may represent angina pectoris. Bowles claims to have suffered a mild heart attack in 1977 and says that she now takes Nitroglycerin for her chest pain. Dr. Hon also mentioned that her risk factors for coronary artery disease include a past history of smoking and a positive family history with her father dying of a myocardial infarction at the age of 49.
 
 
 10
 The only physician who has concluded that Bowles may be unable to work is Dr. Bernard Bach, who discussed her condition in a letter to her attorney in July of 1983. Dr. Bach first saw Bowles in March of 1983 for a physical. He reported that she had mild to moderate chronic obstructive pulmonary disease, obesity, and status post throat surgery. Though it was his opinion that these conditions might make her unable to work, the Secretary and the district court agreed that Dr. Bach's report did not contain sufficient clinical and laboratory data to support his conclusions. For Dr. Bach's opinion to control, the Secretary must be able to review medical findings. 20 C.F.R. Sec. 404.1527; Kirk, 667 F.2d at 538.
 
 
 11
 Both the Secretary and the district court found that Bowles' impairments were mild to moderate in nature. In her brief she argues that the administrative law judge substituted his own judgment based on "common experience" that these ailments are often not as serious as the claimant believes. Despite this offhand statement by the administrative law judge, the fact remains that Bowles has failed to establish that she lacks the capacity to engage in substantial gainful activity. Although she maintains that her daily activities do not show an ability to meet her previous job's exertional requirements, stating, "there was nothing light about it," the Secretary disagreed. Additionally, though the administrative law judge found the nature of her former work to be sedentary or light in nature, the important question is whether the plaintiff has the ability to engage in substantial gainful activity, not whether she can return to her former work, Stille v. Weinberger, 499 F.2d 244, 247 (6th Cir.1974), making Bowles' burden even greater.
 
 
 12
 Bowles also argues that the administrative law judge failed to accept obesity as a basis for disability, and points out that he persisted in questioning her about what she ate and whether she stuck to diets. After Johnson v. Secretary of H.H.S., No. 84-1223 (6th Cir.1986), it is apparent that whether a person is capable of controlling his or her obesity is of no significance in assessing disability. The regulations under 20 C.F.R. Pt. 404, Subpt. P, App. 1, Sec. 10.10 (1986) make clear that obesity, when accompanied by certain other problems, may be a basis for disability. However, though Bowles meets the weight requirement for obesity in the regulations, her other conditions are not of the type or severity required for an assessment of disability under the regulations.
 
 
 13
 In addition Bowles properly argues that disability may be established when a claimant suffers from a variety of medical problems no one of which might be sufficiently disabling to prevent substantial gainful employment, but when taken together have that result. This was the case in Hurst v. Schweiker, 725 F.2d 53 (6th Cir.1984), in which the claimant suffered from coronary artery disease, hypertension and debilitating headaches. Though it is possible that the combination of a claimant's impairments may render him disabled, Bowles has failed to establish disability in this case.
 
 
 14
 The judgment of the district court is affirmed.