805 F.2d 1035
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Henry MITCHELL, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 85-1741.
 United States Court of Appeals, Sixth Circuit.
 Oct. 31, 1986.
 
 Before ENGEL, NELSON and RYAN, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 Henry Mitchell appeals the district court's affirmance of the Secretary's denial of his claim for social security disability benefits. Mr. Mitchell contends that the Secretary's finding of no disability is not supported by substantial evidence. We agree and reverse the district court.
 
 I.
 
 2
 Mitchell was born July 25, 1937. He was forty-seven years old when the Administrative Law Judge denied his claim on September 25, 1984. He completed the eleventh grade in high school and attended a three-month auto mechanics course in 1980. From 1966 until October 3, 1980, he worked for the City of Detroit as a heavy equipment operator, driving refuse and salt dump trucks, loaders, and bulldozers.
 
 
 3
 On October 3, 1980, Mitchell was involved in a truck accident at work. He suffered severe back injuries and considerable pain for which he claims entitlement to disability insurance benefits. He filed his first application for benefits on April 14, 1981. This claim was denied by the Secretary initially and upon reconsideration. On April 7, 1982, he filed a second claim. A hearing was held and this claim was also denied. The Appeals Council refused a request for review and Mitchell did not seek judicial review of the Secretary's final decision to deny his claim for disability insurance benefits.
 
 
 4
 On November 21, 1983, Mitchell filed his third application for benefits, which is the subject of this appeal. A hearing was held before Administrative Law Judge Robert L. Bartelt, Jr., who concluded that Mitchell was not disabled; the Secretary again denied his claim. The Appeals Council declined to review this decision and Mitchell appealed to the district court. A magistrate recommended that the Secretary's decision be affirmed and the district court granted the Secretary's motion for summary judgment.
 
 
 5
 The ALJ made three findings that are challenged on this appeal: (1) That there is no new and material evidence or other good cause to justify reopening either of the two previous decisions; (2) that Mitchell's "subjective complaints including pain are not fully credible"; and (3) that Mitchell "has the residual functional capacity to perform a wide range of light and sedentary work except for a lot of twisting or bending." For the reasons stated hereafter, we decline to review the first of these findings and we agree with Mitchell that the remaining findings are not supported by substantial evidence.
 
 II.
 
 6
 Following the denial of his second claim, Mitchell's back impairment was diagnosed as a herniated disc with nerve root compression. The ALJ concluded that this fact did not justify reopening either of the two previous determinations of disability. 20 C.F.R. Sec. 404.989. In the absence of a constitutional challenge, the Secretary's refusal to reopen a petition which has been denied "is not an agency action for which judicial review is available." Gosnell v. Califano, 625 F.2d 744, 745 (6th Cir.1980) (citing Califano v. Sanders, 430 U.S. 99 (1977)). Since we are without jurisdiction to review this finding, we conclude that the ALJ properly determined that Mitchell's nondisability was established as a matter of res judicata as of February 28, 1983, the date of denial of his second claim. Gibson v. Secretary of Health, Education & Welfare, 678 F.2d 653 (6th Cir.1982).
 
 III.
 
 7
 In deciding that Mitchell's complaints of pain are not fully credible, the ALJ noted inconsistencies between Mitchell's testimony and the written reports in evidence. Three very minor inconsistencies were identified from a "Disability Report" dated November 21, 1983, concerning events which occurred in previous years and which do not merit repetition here. However, the ALJ specifically stated that Mitchell's testimony regarding his condition following a lumbar laminectomy in October of 1983 is contradicted by his treating physician's report and hospital records. Mitchell contends that the decision not to give his testimony full credibility is not supported by substantial evidence.
 
 
 8
 In deciding a disability claim, the Secretary is directed to consider all of the information available, 42 U.S.C. Sec. 423(d)(5)(B), "without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined [not] to be disabled." 42 U.S.C. Sec. 423(f)(4). "The findings of the Secretary as to any fact supported by substantial evidence, shall be conclusive...." 42 U.S.C. Sec. 405(g). In Richardson v. Perales, 402 U.S. 389 (1971), the Supreme Court held that substantial evidence "is more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 401 (quoting Consolidated Edison v. NLRB, 305 U.S. 197, 229 (1938)). This Court has consistently held that the evidence must be substantial, based upon the record as a whole. Houston v. Secretary of Health & Human Services, 736 F.2d 365 (6th Cir.1984).
 
 
 9
 The evidence before the ALJ included a report written December 15, 1983, by Mitchell's treating physician, Dr. Subczynski. The report records innumerable office visits with complaints of pain, seven hospitalizations, three myelograms, CAT scans, EMGs, and the attempt to correct a severe back impairment with the laminectomy referred to above. Dr. Subczynski concluded that Mitchell "tolerated the surgery well" and "is improved and still improving but at least at present he should be considered disabled and his disability should be extended for at least a year." An addendum to this report dated February 23, 1983, indicates that Mitchell's leg gave out, causing him to fall down the stairs, for which he was again hospitalized in considerable pain. Dr. Subczynski ordered another EMG and states: "He [Mitchell] is still totally disabled."
 
 
 10
 On January 4, 1984, Mitchell was examined, at the Secretary's request, by Dr. Tomas. This report states that "there has been some deterioration." Dr. Tomas concludes: "The patient appears to be in a significant degree of discomfort.... [I]t certainly appears that the patient still has an ongoing problem with disc disease in the lumbar area and possibly degenerative changes in the right hip."
 
 
 11
 In light of the foregoing evidence, and based upon his conclusion that Dr. Subczynski's report "was prepared for the purpose of establishing continuing eligibility for worker's compensation benefits," the ALJ discounted the doctor's comments on Mitchell's disability as referring solely to his past work as a truck driver. We fail to see how the ALJ arrived at this conclusion; the report was addressed to the "Disability Determination Service of Social Security Claims" and was obviously prepared for the Secretary's use in determining Mitchell's eligibility for disability insurance benefits. In any event, this Court has held that where an individual is disabled for a durational period of twelve months, he is entitled to receive benefits. Allen v. Califano, 613 F.2d 139 (6th Cir.1980). Although a physician's statement that his patient is "disabled" does not determine the issue, 20 C.F.R. Sec. 404.1527, a treating physician's opinion is entitled to much greater weight than that of the government's non-treating physician. Houston, 736 F.2d at 367. Importantly, Dr. Subczynski's opinion regarding Mitchell's condition is not contradicted by Dr. Tomas. Dr. Subczynski's report is substantial evidence of Mitchell's disability. See Perales, 402 U.S. at 402. Notwithstanding the fact that an EMG taken March 5, 1984, revealed "no evidence of neuropathy in the lower extremities ... and was within normal limits," we find that there is no conflicting evidence regarding Mitchell's claim of pain. See Hurst v. Schweiker, 725 F.2d 53 (6th Cir.1984).
 
 
 12
 We acknowledge that credibility determinations by the ALJ are entitled to a high degree of deference. Beavers v. Secretary of Health, Education & Welfare, 577 F.2d 383 (6th Cir.1978). "Since credibility, especially with alleged pain, is crucial to resolution of the claim, the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.' " Kirk v. Secretary of Health & Human Services, 667 F.2d 524, 538 (6th Cir.1981), cert. denied, --- U.S. ----, 103 S.Ct. 2428 (1983) (quoting Beavers, 577 F.2d at 387). However, where disabling pain is the chief complaint, as it is in this case, and the record reveals no conflicting evidence of the absence of pain and substantial evidence of ample cause for it, "we decline to give substantial deference to the ALJ's ... credibility finding." King v. Heckler, 742 F.2d 968, 975 (6th Cir.1984). See also Martin v. Secretary of Health & Human Services, 735 F.2d 1008 (6th Cir.1984).
 
 IV.
 
 13
 Finally, Mitchell contends that there was insubstantial evidence to support the ALJ's findings on his residual functional capacity. The Secretary can find a claimant disabled only if he is both unable to do his previous work and unable to "engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. Sec. 423(d)(2)(A). If he is unable to perform relevant past work,
 
 
 14
 "[t]he ALJ is directed to consider the claimant's residual functional capacity, that is, the level of work the claimant is able to perform (sedentary, light or medium) and the claimant's vocational factors--age, education and prior work experience ... By this process it is determined whether the claimant is able to perform substantial gainful activity in the national economy."
 
 
 15
 Kirk, 667 F.2d at 528.
 
 
 16
 In reaching his determination as to Mitchell's residual functional capacity, the ALJ heard his testimony that he was unable to work because of constant pain in his back, right leg, and stiffness in his hips. Mitchell testified that his condition had worsened since his surgery; that he used a cane and took Empirin and Tylenol with codeine every twelve hours; and that his pain affected his ability to concentrate. He testified that he was able to walk from his house to the corner, five houses away, but felt unbalanced in doing so; that he could lift and carry small objects such as a carton of milk from the refrigerator to the table; and that he could stand for periods not exceeding five minutes. His daily activities consist of sitting around, reading the newspaper, watching television, and napping.
 
 
 17
 The ALJ also heard the testimony of a vocational expert, Mr. Dulecki, who characterized Mitchell's past work as "medium" in exertional level and semi-skilled, but involving no transferable skills. Dulecki testified that for an individual of Mitchell's age, education, and work experience, ten thousand sedentary, unskilled jobs in areas of visual inspection, assembly and packaging, exist in the Detroit area. He stated that such sedentary jobs usually entail six hours of seated work that could be done standing, but that the remaining two hours of standing/walking work could not be done seated. When asked to assume that Mitchell's testimony was credible, Dulecki testified that there were no jobs that he could perform because "he complains of pain that causes him to have to lay down throughout the work day." Dulecki also testified that the concentration problem caused by the pain would also be a preclusive factor.
 
 
 18
 The ALJ found that Mitchell had a severe back impairment and could not perform his past work. However, because he found Mitchell's complaints of pain not fully credible, he determined that he could "perform a wide range of light and sedentary work" and that there are a significant number of such jobs available in the Detroit area. The ALJ found that Rules 201.21 and 202.21, Table Nos. 1 and 2 of App. 2, Subpart P of C.F.R. Part 404, direct a conclusion that Mitchell is not disabled. In light of our holding that the ALJ's credibility determination is not supported by substantial evidence, we reject this conclusion.
 
 
 19
 The judgment is reversed and the case is remanded to the district court with instructions to remand to the Secretary for an award of benefits.
 
 
 20
 Reversed and remanded.
 
 
 21
 DAVID A. NELSON, Circuit Judge, concurring in part and dissenting in part.
 
 
 22
 Although I concur in Part II of this court's opinion, I must dissent from the decision to remand for an award of benefits.
 
 
 23
 There was evidence before the ALJ that after the claimant's laminectomy his treating physician said he was "free of his symptoms and doing markedly better." Shortly thereafter, another doctor examined the claimant at the request of the agency. This doctor observed no muscle wasting and found that the claimant "has good muscle development and strength." The results of a post-operative EMG were, as the court says, normal.
 
 
 24
 The ALJ recognized that the claimant could not do much bending and twisting and that he needed to have the option to sit or stand at will throughout the day. A vocational expert testified that there are thousands of sedentary jobs with a sit/stand option in the Detroit area. Given all the facts, and the arguable inconsistency between the objective post-operative medical evidence and the claimant's subjective complaints of disabling pain, I think there was substantial evidence from which the ALJ could find that the claimant's pain was not so severe as to keep him from performing an appropriate sedentary job.
 
 
 25
 This case is distinguishable from Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir.1985), where the claimant had a "hunch-back appearance" associated with a condition known as kyphoscoliosis. In Wages it was unreasonable for the ALJ to find the claimant's subjective complaints of pain not credible in the face of overwhelming objective evidence. In the instant case, however, the objective evidence is not overwhelming and does not all point the same way. Where, as here, there is some conflict in the objective evidence, credibility determinations are particularly important.