850 F.2d 692
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John C. QUINN, Plaintiff-Appellant,
v.
Otis R. BOWEN, M.D., Secretary of Health and Human Services,
Defendant- Appellee.
 No. 87-1718.
 United States Court of Appeals, Sixth Circuit.
 July 7, 1988.
 
 Before KEITH and WELLFORD, Circuit Judges and ODELL HORTON*, District Judge.
 PER CURIAM:
 
 
 1
 Quinn alleges disability resulting from a combination of impairments, of which he claims the most serious are back and knee pain. The Secretary denied benefits, finding that Quinn retained the physical capacity to perform sedentary work activity with a sit/stand option and that a significant number of jobs consistent with Quinn's training and exertional limitations existed in the Detroit area. Both the magistrate and the district court found that substantial evidence supported the Secretary's conclusion. Based on the medical evidence regarding the severity of Quinn's impairments, we believe a reasonable mind could have concluded that Quinn's impairments were not totally disabling. In addition, we find from the record that Quinn's most disabling impairment, in terms of his employability, is his severe, unabated obesity.
 
 
 2
 Appellant Quinn lost his job as a tool crib leader in September 1980, when his employer went out of business. He has not worked since that time, but testified that he sought employment until 1983, when pain in his back and legs began bothering him so much that he couldn't work. Quinn is obese; at six feet tall, he weighed in the range of 309 to 273 pounds in the period from June 1984 until February 1986.
 
 
 3
 Quinn applied for disability benefits in July 1985, alleging disability resulting from degenerative disc disease, arthritis in the knees, hypertension, diabetes, gout, carpal tunnel syndrome, and cirrhosis of the liver. The application was denied, and Quinn requested a hearing. Following a hearing at which Quinn and a vocational expert testified, the ALJ rendered a decision denying benefits. The ALJ found that although Quinn's impairments prevented him from performing his past relevant medium work as a tool crib leader, he retained the residual functional capacity to perform sedentary work with a sit/stand option. We review the ALJ's determination, which became the Secretary's final decision, only to determine whether it is supported by substantial evidence.
 
 
 4
 In his application for benefits, Quinn claimed that he was disabled due to degenerative disc disease, arthritis, hypertension, diabetes, gout, carpal tunnel syndrome, and cirrhosis of the liver. "[D]isability may be established by a claimant suffering from a variety of medical problems, no one of which might be sufficiently disabling to prevent substantial gainful employment but when taken together have that result." Hurst v. Schweiker, 725 F.2d 53, 55-56 (6th Cir.1984). It is clear, however, that the mere diagnosis of multiple impairments does not automatically entitle a claimant to benefits; he must also prove sufficient duration and disabling effect. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 366-67 (6th Cir.1984).
 
 
 5
 Quinn has made no showing of disabling effect as to several of the impairments listed on his application. His gout, cirrhosis, hypertension, and diabetes all either are merely part of his medical history or are currently controllable by medications. There is no indication that Quinn's mild hypertension has caused any serious disabling problems, and Quinn himself testified that he suffered few symptoms from his diabetes bearing upon his claimed disability. Although Quinn complained at the hearing that, as a result of his carpal tunnel syndrome, his hands sometimes cramp up and cause him to drop things, Dr. Ellenburg, one of his treating physicians, reported in June 1984 that Quinn complained only of "some occasional numbness in the hand but nothing bad to speak of."
 
 
 6
 Quinn suffered lower back and leg pain in 1984, and a CT Scan of his spine in late 1984 showed spinal stenosis and the possibility of a central herniated disc. In January 1985, Quinn was hospitalized and underwent epidural steroid injections and physical therapy for his back problems. The treatment caused marked improvement in his condition. In follow-up visits, Dr. Ellenburg found that Quinn's back was doing relatively well, that he only had to change his position if he sat or stood too long in one position, and that he had periods of mild discomfort in his back. Quinn himself testified that his back pain improved after the steroid treatment, but that his back still got tired. This evidence clearly shows that after January 1985, Quinn's back problems caused him only mild discomfort.
 
 
 7
 Quinn also complained that he began suffering arthritic pain in his knees, especially his right knee, in 1985. While the evidence shows that in the early part of that year Quinn experienced only minimal degenerative changes in both knees and suffered no joint effusions, it also shows that by the second half of 1985 Quinn had developed moderate to severe arthritis in both his knees. In September 1985, Dr. Clarke noted that Quinn took pain medication three times daily for "constant knee discomfort" and diagnosed bilateral severe degenerative arthritis of the knees. In November 1985, Dr. Krugel noted moderate bilateral knee pain. While Dr. Ellenburg noted that Quinn was having problems with his knees, he opined in February 1986 only that Quinn was "somewhat limited in his physical capacity."
 
 
 8
 That Quinn suffered from arthritis does not contradict the Secretary's conclusion in this case. The ALJ found that Quinn could perform sedentary work with a sit/stand option. Given the variety of medical opinions regarding the severity of Quinn's arthritis and the pain it caused, the Secretary reasonably could have concluded that the arthritis, either singly or in combination with Quinn's other impairments, did not preclude Quinn from performing sedentary work with a sit/stand option.
 
 
 9
 Ultimately, the medical evidence indicates that Quinn is most seriously debilitated by his severe obesity. Quinn's physicians have referred to it as his "main problem," and have linked it to his knee problems. In January 1985, Quinn was placed on a 1200 calorie diabetic diet, and he was still on the diet in February 1986. Although Quinn was sixty pounds lighter in February 1986 than in May 1981, in the year preceding the hearing his weight varied within at least a twenty-pound range. Furthermore, although his physicians had placed him on a strict diet, he experienced a net gain of weight in the year preceding the hearing. This evidence reflects that Quinn has failed to follow the weight loss program prescribed by his doctors, 20 C.F.R. Sec. 404.1530, and that the main bar to Quinn's weight loss was an indicated lack of motivation and cooperation. Cf. Osborne v. Cohen, 409 F.2d 37, 39 (6th Cir.1969) (upholding denial of benefits for chronic alcoholic when alcoholism was shown not to be irremediable). Quinn's net weight loss in the five-year period preceding his hearing amply demonstrates that, contrary to the arguments of his counsel, Quinn is not prevented from dieting and losing weight by his diabetes and thyroid condition. We believe that if Quinn were to adhere to the diet prescribed by his physicians, as he did for a period of time, the resulting weight loss would likely cause an improvement in many of his existing medical problems, such as his diabetes, hypertension, and knee and back problems, and would enhance his ability to engage in competitive employment.[1]
 
 
 10
 Based on these factors, we find that substantial evidence supported the Secretary's finding that Quinn retained the residual functional capacity to perform sedentary work with a sit/stand option. The vocational expert testified at the hearing that 3,500 sedentary jobs that typically provide a sit/stand option and to which Quinn's skills were transferrable exist in the metropolitan Detroit area. In light of this testimony, we conclude that the Secretary satisfied his burden of proof in showing jobs in the regional economy that Quinn could perform and that therefore the Secretary's finding of no disability is supported by substantial evidence.
 
 
 11
 For these reasons, we AFFIRM the Secretary's denial of disability benefits.
 
 
 
 *
 The Honorable Odell Horton, Chief Judge, U.S. District Court for the Western District of Tennessee, sitting by designation
 
 
 [1]
 The evaluations of Quinn's ability to work contained in reports from New Horizons of Oakland County, Inc., which conducts vocational rehabilitation programs, also point to Quinn's obesity as a major factor limiting his ability to succeed in a competitive work environment. Similarly, in November 1985, the Michigan Department of Education's Rehabilitation Services Office found Quinn "marginally employable ... due to his obesity and lack of physical stamina."