**Stephanie CALHOUN, Plaintiff,**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant.**

**No. 03–71524.**

United States District Court,
E.D. Michigan,
Southern Division.

June 14, 2004.

Lewis M. Seward, Seward, Tally, Bay City, MI, for Stephanie J. Calhoun, Plaintiff.

Elizabeth J. Larin, U.S. Attorney's Office, Detroit, MI, for Social Security, Commissioner of, Defendant.

### ORDER ADOPTING REPORT AND RECOMMENDATION

ROBERTS, District Judge.

On April 23, 2004, Magistrate Judge Whalen issued a Report and Recommendation [Doc. 17], recommending that Defendant's Motion for Summary Judgment be denied, Plaintiff's Motion for Summary Judgment be granted, and the case be remanded for further proceedings. Neither party has filed objections within the ten day period pursuant to Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1). Thus, the Court adopts the Report and Recommendation. Plaintiff's Motion for Summary Judgment [Doc. 9] is **GRANTED**, Defendant's Motion for Summary Judgment [Doc. 15] is **DENIED**, and the case is **REMANDED** for further proceedings.

**IT IS SO ORDERED.**

### REPORT AND RECOMMENDATION

WHALEN, United States Magistrate Judge.

Plaintiff Stephanie Calhoun brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) to challenge a final decision of Defendant Commissioner denying her application for Social Security benefits under Title II and XVIII of the Social Security Act. Both parties have filed summary judgment motions which have been referred for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Because there was not substantial evidence on the record that Plaintiff could perform jobs in the national economy, Plaintiff's Motion for Summary Judgment should be granted, Defendant's Motion for Summary Judgment should be denied, and the case remanded for further proceedings.

### PROCEDURAL HISTORY

Plaintiff applied for Supplemental Security Income (SSI) under the Social Security Act alleging that she became disabled on February 13, 1991 (Tr. 53, 65).[1] Plaintiff's claim was denied initially (Tr. 35). On April 23, 2002, a hearing was held before Administrative Law Judge (ALJ) John Ransom, where Plaintiff was represented by counsel and testified (Tr. 391–411). Mary Williams testified as a voca-

1. Plaintiff filed a previous application in 1998, which was denied by an ALJ following a hearing and a decision on November 22, 1999 (Tr. 27). The current ALJ found that the evidence did not establish any basis to reopen that decision (Tr. 27).

tional expert (VE) (Tr. 407–412). The ALJ issued a decision denying benefits and finding that Plaintiff was not disabled because she could perform a significant number of jobs in the national economy (Tr. 26–34).

On February 21, 2003, the Appeals Council denied review (Tr. 5–7). Both parties have submitted summary judgment motions.

## BACKGROUND FACTS

Plaintiff was 53 years old when the ALJ issued his decision (Tr. 53). She graduated from high school, and completed some college-course work (Tr. 71). Plaintiff claimed that she could not work because of high blood pressure, pain in her back, right hand and right foot, swelling in her feet and legs, chest pain and headaches (Tr. 395–397). She further stated that she had poorly controlled diabetes (Tr. 399).

### A. Plaintiff's Testimony

At the April 2002, hearing before ALJ Ransom, Plaintiff testified that she did not drive anymore because it was too painful on her back, right hand and right foot (Tr. 394–395). She stated that she also had problems reading (Tr. 395). Plaintiff indicated that she took blood pressure medication, but that it did not work (Tr. 396). "... My blood pressure is always high" (Tr. 396). She said that she also experienced swelling with her feet and legs and that she had chest pain (Tr. 397). The swelling lasted all night, and in the summer, the swelling was especially bad. Plaintiff testified that she had headaches, and that her doctor told her it might be mini seizures "because the headaches are in colors" (Tr. 398). She indicated that she had pain from the base of her neck all the way down her spine and all along her right side, especially in her joints (Tr. 399).

Plaintiff testified that her blood sugar level ran high, and "once every two days, it'll drop just for no reason.... And once it drops past 70, I get the shakes" (Tr. 399). She said that she also had problems with her vision, and that her eyes would stay blurry even when she wore glasses (Tr. 400). Plaintiff indicated that she had an untreatable bleeding ulcer (Tr. 400). She said that she had a lot of side effects from all the medications that she took, such as sleepiness, itchiness, and that her hair fell out and some medications caused her to stay awake (Tr. 401). She also indicated that she was depressed and had fibromyalgia (Tr. 402).

Plaintiff testified that she did not cook anymore, did not clean dishes, but would straighten up or sweep when the house needed it (Tr. 403). One of her daughters did the laundry and the grocery shopping (Tr. 404). Plaintiff stated that she could walk about four blocks, "but by the time I get back I'd be in so much pain, I'd have to just stand there at the sink" (Tr. 405). She indicated that she could bend and walk stairs sometimes, had problems standing in lines, reaching and gripping, could sit for about an hour and was unable to carry or lift weight (Tr. 405–407). Plaintiff said that she could no longer perform any hobbies because of pain (Tr. 407). Her hobbies had been sawing, wood finishing, lamp repair, and writing (Tr. 407).

### B. Medical Evidence

Dr. Santiago examined Plaintiff in 1999, at which time Plaintiff's hypertension was under fair control (Tr. 305–306). In a December 1999 report, Dr. Santiago assessed Plaintiff as capable of standing, walking, and sitting for four hours throughout an eight-hour workday, occasionally lifting up to twenty pounds, and frequently lifting up to ten pounds. Plaintiff could use her hands and arms for

grasping, reaching, pushing, pulling, and fine manipulation, and could operate foot and leg controls with both feet (Tr. 306). Dr. Santiago stated that Plaintiff was limited in reading, writing, and following directions (Tr. 306).

Dr. Pestrue performed a consultative psychological examination of Plaintiff in September 2000 (Tr. 284–291). She reported that her biggest problem was pain in her back because of deteriorating discs (Tr. 284). Plaintiff indicated that she had severe headaches three times a week, and that her blood pressure was high. She also said that she had chest pains and was depressed (Tr. 285). Plaintiff reported felling depressed due to pain. She reported performing daily activities including limited household chores (Tr. 287–288). Although Plaintiff's facial expression appeared depressed, she was alert and interacted with the examiner in a friendly, cooperative, spontaneous, and socially appropriate manner (Tr. 288). The pace, volume, and tone of her speech were normal. Plaintiff was in contact with reality, her motor activity was normal, and she appeared to have good motivation for many of life's usual activities. Dr. Pestrue diagnosed dysthymia, and assigned Plaintiff a Global Assessment of Functioning (GAF) rating of 50[2] (Tr. 291). He indicated that Plaintiff was able to manage her own funds (Tr. 291).

Dr. Sankaran examined Plaintiff in October 2000, at which time she complained of pain in her spine, right hip, and left leg (Tr. 307–310). Plaintiff was able to perform most home chores that did not require bending or kneeling (Tr. 307). She said she had been diagnosed with diabetes, but that her condition was controlled by medication (Tr. 308). Dr. Sankaran stated

that Plaintiff's lumbar area was tender with muscle spasm present (Tr. 309). "The patient's whole spine is tender with muscle spasm present suggestive of fibromyalgia with trigger spots present" (Tr. 309). Dr. Sankaran diagnosed depression (which, to some extent, was controlled by medication), fibromyalgia, and arthritis in Plaintiff's left hip resulting in minimal loss of motion (Tr. 310).

Dr. Hendricks examined Plaintiff in January 2001 (Tr. 341–344). Plaintiff demonstrated normal hand dexterity, normal ranges of motion in her extremities, and normal unassisted gait (Tr. 343). Plaintiff also demonstrated tenderness to palpatation of the cervical thoracic junction area, lumbar spine, right sacroiliac joint areas, and the right knee. No swelling was noted (Tr. 343).

Dr. Greenwalt treated Plaintiff from July 2000, through August 2001, when he described Plaintiff as reporting fatigue and overall body pain (Tr. 378–390).

Dr. Arthur F. Dundon completed a Psychiatric Review Technique form (PRTF) and a mental residual functional capacity assessment, indicating that Plaintiff had mild restrictions of activities of daily living, moderate difficulties in maintaining concentration, persistence, or pace, with no episodes of decompensation (Tr. 325). Further, he noted that Plaintiff could not do complex, technical tasks, but that she retained the ability to do simple tasks on a sustained basis (Tr. 331). In a physical residual functional capacity assessment, Dr. Dundon noted that Plaintiff should never climb ladders, ropes, and scaffolds (Tr. 335), and should avoid even moderate exposure to machinery and height hazards (Tr. 337).

**2.** A GAF score of 41–50 indicates "[s]erious symptoms … OR any serious impairment in social, occupational, or school functioning …" American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders,* 32 (4th Ed.1994)(*DSM–IV*).

## C. Vocational Expert Testimony

At the April 2002 hearing, the ALJ posed a hypothetical question to the VE:

Q: "Assume that she's got her associates degree and assume her past work. Assume further if you would that she has the limitations and impairments that she's alleged and also that her testimony is credible. If you assume those facts, in your opinion, could she perform her past work?" (Tr. 409).

A: "No, for a number of reasons. She stated that she elevates her legs two to three times daily. I'm not sure if that's every day or just during the summer. She also stated that she's very tired and it sounds like [it] comes on suddenly and there are times when she just has to sleep during the day. And also because she stated that she's unable to lift 5 pounds for any further than the cooler to the checkout" (Tr. 409).

The ALJ asked whether all work would be precluded with that hypothetical, and the VE answered yes. Then the ALJ posed a second hypothetical question:

Q: "Okay. Assume for me if you would that she could perform light work but she'd require a sit/stand option, no repetitive bending, twisting, turning, squatting, kneeling, crawling, climbing, pushing, pulling, gripping or grasping. And she'd also require a simple repetitive job. Now assuming those facts in your opinion, would there be jobs in existence in significant numbers in the regional economy that she could perform?" (Tr. 409).

A: "Yes. An example would be inspector ... a sorter ... and parking lot attendant ..."(409).

Plaintiff's attorney then asked whether work would be precluded if the hypothetical individual had to elevate her legs higher than the rest of her body during the day, and the VE answered yes (Tr. 412).

## D. The ALJ's Decision

The ALJ concluded that Plaintiff had not engaged in substantial gainful activity during the relevant period (Tr. 33). He found that Plaintiff had severe impairments of degenerative disc disease, fibromyalgia, arthritis of the right hip, hypertension, diabetes, and major depression, but that these impairments were not severe enough to meet or equal the impairments of Listing 1, Subpart P, Regulations No. 4 (Tr. 31).

The ALJ found that Plaintiff had the residual function capacity (RFC) to perform a significant range of light work (Tr. 34). ALJ Ransom noted that Plaintiff could not perform her past relevant work because it did not provide for a stand/sit option and required her to bend, twist, turn, squat, grip and grasp (Tr. 31). Based on the VE's testimony that Plaintiff could perform a significant number of jobs in the national economy and the framework of Medical–Vocational Rules 202.10, the ALJ found that Plaintiff was not disabled (Tr. 34).

## *ANALYSIS*

### A. Standard of Review and Framework for Disability Determination

In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir.1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d

842 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir.1985). Furthermore, the Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986)(en banc).

In determining the existence of substantial evidence, it is not the function of this court to try cases de novo, resolve conflicts in the evidence, or decide questions of credibility. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir.1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984). The substantial evidence standard "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen*, 800 F.2d at 545. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm. *Studaway v. Secretary of Health and Human Services*, 815 F.2d 1074, 1076 (6th Cir.1987); *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 535 (6th Cir.1981), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983).

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act further states that, to prove disability, one must show that "[s]he is not only unable to do

h[er] previous work, but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) had a severe impairment; 3) had an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to her past relevant work; and, 5) if not, whether she can perform other work in the national economy. 20 C.F.R. § 416.920(a).

If Plaintiff's impairments prevented her from doing her past work, the Commissioner, at step five, would consider her RFC, age, education and past work experience to determine if she could perform other work. If she could not, Plaintiff would be deemed disabled. 20 C.F.R. § 404.1520(a)-(e). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Commissioner*, 203 F.3d 388, 391 (6th Cir.1999). To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir.1987). Substantial evidence may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.' " *Id.* (citations omitted).

**B. Application to Present Case**

Plaintiff argues that the ALJ erred in assessing her symptoms, particularly pain, under 20 C.F.R. § 404.1529 and Social Se-

curity Ruling (SSR) 96–7p. *Plaintiff's Brief* at 4. She argues that the ALJ failed to consider seven factors mandatorily required under the rules and regulations for evaluating all her symptoms. *Id.* Also, Plaintiff argues that ALJ Ransom misrepresented and distorted the record. *Id.* at 9.

The ALJ determined that Plaintiff had no motivational drive to sustain gainful work activity as reflected by her lack of earnings record over the last fifteen years (Tr. 27). With respect to Plaintiff's mental impairment of depression, he found that she was discharged from receiving treatment due to nonattendance. ALJ Ransom noted that Plaintiff reported to Dr. Pestrue her daily activities of washing dishes, mopping the floor, cleaning the bathroom and meal preparation (Tr. 28). He found that Plaintiff's depression resulted in moderate difficulties in maintaining concentration, persistence, or pace, mild restrictions of activities of daily living, and no episodes of decompensation (Tr. 28).

Regarding Plaintiff's physical impairments, ALJ Ransom found that Plaintiff's hypertension was under fair control (Tr. 28). He found that Plaintiff "did not testify that [her medications] caused negative side effects or were ineffective when taken as directed" (Tr. 29). He noted that no evidence established that Plaintiff was prescribed a TENS unit, underwent physical therapy or had been referred to a chronic pain clinic. In Plaintiff's daily activity form, the ALJ found that she attended church twice a week, washed dishes and went shopping for brief periods of time (Tr. 30).

After finding Plaintiff's subjective complaints of pain not fully credible, the ALJ held that she had the RFC to perform a limited range of unskilled light work with restrictions of a sit/stand option, no repetitive bending, twisting or turning, no re-

petitive pushing or pulling, gripping or grasping, squatting, kneeling, crawling or climbing, and simple and repetitive job tasks (Tr. 31).

█ ALJ Ransom indicated that he considered all of Plaintiff's symptoms, including pain, based on the requirements of 20 C.F.R. § 404.1529 and SSR 97–7p (Tr. 31). I disagree. The relevant portion of the applicable regulation states:

> Factors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e/g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3).

Moreover, *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir.1986) sets forth the standard for reviewing subjective complaints of pain. "First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Id.*

The ALJ's assessment of Plaintiff's subjective complaints of pain is factually incorrect. Also, based on his factually incorrect assessment, the ALJ incorrectly determined that Plaintiff was not fully credible (Tr. 30).[3]

In finding that Plaintiff's subjective complaints of pain were not fully credible, the ALJ stated that Plaintiff had a motivational deficiency toward obtaining and sustaining gainful work activity, was able to perform daily activities, reported no side effects from any of her medications, and that the objective medical evidence did not support her allegations (Tr. 19–20). A careful review of the record shows that the ALJ was factually inaccurate.

First, the ALJ found that Plaintiff lacked motivation to return to work because her "current application (November 23, 1999) establishes earnings in only one year in the amount of $378 in 1996 ..." (Tr. 27). This is a *non sequitur*. There is no evidence of record to support such a finding, beyond mere conjecture and speculation. To the contrary, it supports Plaintiff's allegation that she became disabled on February 13, 1991 (Tr. 53). She may not have worked many years prior to her current application, but Plaintiff's current application indicated an alleged onset date in 1991, not 1999, or 2000. Thus, I find that the ALJ lacked substantial evidentiary support to find a "motivational deficiency."

Next, the ALJ found Plaintiff not disabled and not credible because she was able to perform daily activities (Tr. 28, 30). However, a closer examination of the record reveals that Plaintiff was not able to perform activities on a daily basis. For example, the ALJ noted that Plaintiff attended church twice a month for two and a half hours, washed dishes, and went shopping for brief periods (Tr. 30). He stated that "[s]uch descriptions of daily activities, although not overly ambitious, are not unusual for an *unemployed* person" (Tr. 30)(emphasis added). The issue is not whether the Plaintiff is an unemployed person, but rather, whether such activities are characteristic of a disabled individual. ALJ Ransom distorted the record with respect to Plaintiff's daily activities. Plaintiff did not regularly attend church twice a month for two and a half hours, but rather stated, "I go to church some time 2 time a month ... church last for 2–2 1/2 hr.... I do a lot of walking and crying due to pain. I often just leave" (Tr. 87). She testified that she missed a lot of church, and if she went, she would not stay through the whole service (Tr. 87–88, 96). With respect to washing dishes, Plaintiff stated on her questionnaire that she would "wash a plate" (Tr. 83). She testified that she washed dishes every three days (Tr. 82). Further, Plaintiff testified that her daughter did the shopping (Tr. 404). Also, she indicated in her daily activity form

**3.** Therefore, in conjunction with reviewing the adequacy of the ALJ's assessment of Plaintiff's subjective complaints of pain, the Court must determine "whether substantial evidence exists to support the ALJ's decision to discount [Plaintiff's] credibility." *Felisky,* 35 F.3d at 1036. In determining the credibility of an individual's statements, it is not sufficient for the ALJ to make a single, conclusory statement that the individual's allegations have been considered or that the allegations are or are not credible. Social Security Ruling (SSR) 96–7p, 61 FR 34483–01 at 34484, 1996 WL 362209. The ALJ's decision must be based on specific reasons for the findings of credibility. *Id.* These reasons must be supported by substantial evidence in the record. *Howard v. Commissioner of Social Security,* 276 F.3d 235, 242 (6th Cir.2002); *Heston v. Commissioner of Social Security,* 245 F.3d 528, 536 (6th Cir.2001); *Felisky, supra.* Moreover, in reviewing the ALJ's findings the evidence must be reviewed as a totality, examining the record as a whole. *Mowery v. Heckler,* 771 F.2d 966, 970 (6th Cir.1985).

that "Again, my daughter do this for me . . . I give my daughter a list or my sister" (Tr. 83).

In fact, other evidence of record corroborates Plaintiff's lack of ability to maintain her daily activities. Her sister stated that Plaintiff cooked very little, that she shopped for her, and that she helped Plaintiff clean the house (Tr. 76). Therefore, the ALJ's finding that "[w]hile the claimant undoubtedly may experience some pain, limitations and restrictions from her impairments, the extent and frequency reported is not fully credible . . .," is not supported by the record.

The ALJ was also factually incorrect with respect to Plaintiff's treating physicians and their findings. He stated that Plaintiff's treating physician did not find that her diabetes and hypertension were poorly controlled, as Dr. Hendricks found (Tr. 29). Again, the record fails to support this finding. The treating family records disclosed "accelerated hypertension," "inadequately controlled," "poor," "DM uncontrolled" and "poor controlled" (Tr. 153, 157, 180, 267, 273, 372, 373, 390). Further, ALJ Ransom incorrectly noted that Plaintiff's responses to all of Dr. Pestrue's questions were appropriate and provided for no other limitations, other than showing poor self-esteem and a mildly depressed facial expression (Tr. 28). To the contrary, Dr. Pestrue noted that Plaintiff's recent memory was impaired, along with an impaired concentration (Tr. 89). Further, Dr. Pestrue found that Plaintiff could not perform serial sevens despite having a high school degree and an associate degree (Tr. 308).

Finally, ALJ Ransom was factually incorrect with respect to Plaintiff's complaints of side effects from her medications. Here, Plaintiff listed all the medications that she took: Glipizide, Clucophage, Norvase, Captapril, Atenolol, Estradiol, Triamterine HCTZ, Ultram, Amitriptytine, Veragomil, Cyclabenzaprine, Cimetidine, Depokate, Protomix, Celexa, Biaxin, Trimax, and Privacid (349). The ALJ found that Plaintiff "did not testify that [her medications] caused negative side effect or were ineffective when taken as directed" (Tr. 29). The record shows otherwise. Plaintiff testified that she had a lot of side effects from all the medications that she took, such as sleepiness, itchiness, and that her hair fell out and some medications caused her to stay awake (Tr. 401). This record, viewed as a whole, sufficiently raises the question of adverse drug reactions and that the ALJ was remiss in not considering that issue, particularly given the express directive of 20 C.F.R. § 404.1529(c)(3)(iv).

Because the ALJ's credibility determination and his assessment of Plaintiff's subjective complaints of pain were based on an inaccurate analysis of the record, it cannot be said that these determinations were supported by substantial evidence. Given the ALJ's unsupported credibility determination, along with the medical evidence and the VE's testimony, this case falls within the ambit of *Felisky*, 35 F.3d at 1041, where the Court stated:

> "Our review of the entire record reveals that it is devoid of substantial evidence to support the ALJ's decision to discount Felisky's credibility. The VE testified that, if Felisky's testimony were believed, Felisky is completely disabled. We therefore must find that the Secretary did not carry his burden of showing that Felisky possesses the residual functional capacity to perform substantial gainful activity."

In the present case, the VE testified that if Plaintiff's testimony were true, then no jobs would be available (Tr. 409). Accordingly, a remand should be granted. The question is whether to remand for further administrative proceedings and

findings or to remand for an award of benefits using Plaintiff's disability onset date for calculating past due benefits. *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994). The court in *Faucher* held that it is appropriate to remand for an award of benefits when "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Id.* This entitlement is established if "the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176 (citing *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir.1985)).

In this case, the evidence that Plaintiff suffers from disabling pain is strong, but not overwhelming. It is not clear what the ALJ's conclusions would have been if he had properly considered the record and Plaintiff's credibility. Therefore, under *Faucher*, the case should be remanded for further administrative proceedings. An "ALJ may distrust a claimant's allegations of disabling symptomatology if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other." *Moon v. Sullivan*, 923 F.2d 1175, 1183 (6th Cir.1990). In the present case, a remand for further proceedings is necessary in order for the ALJ to properly assess the evidence.

### CONCLUSION

For the reasons stated above, I recommended that Plaintiff's Motion for Summary Judgment be granted, Defendant's Motion for Summary Judgment be denied, and the case remanded for further proceedings.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D.

Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections. March 23, 2004.