Harvey S. **MOWERY,**
Plaintiff-Appellant,

v.

Margaret M. **HECKLER, Secretary of Health and Human Services,** Defendant-Appellee.

No. 84–5312.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 25, 1985.

Decided Sept. 3, 1985.

---

Dorothy B. Stulberg, Mostoller & Stulberg, William A. Allen (argued), Rural Legal Services of Tenn., Lenny L. Croce, Oak Ridge, Tenn., for plaintiff-appellant.

John W. Gill, U.S. Atty., Charles Fels, Laurens Tullock (argued), Knoxville, Tenn., for defendant-appellee.

Before MERRITT and WELLFORD, Circuit Judges, and HILLMAN, District Judge.*

HILLMAN, District Judge.

Harvey S. Mowery applied for social security disability insurance benefits on October 16, 1981, and supplemental security income benefits on September 24, 1981.

* Honorable Douglas W. Hillman, District Judge, United States District Court for the Western District of Michigan, sitting by designation.

His applications were denied initially and upon reconsideration. An administrative hearing was held on January 20, 1983, before an Administrative Law Judge (ALJ) and a decision was issued February 16, 1983, denying his claim. The Appeals Council denied review on August 5, 1983.

A complaint for judicial review was filed on September 22, 1983. The district court denied plaintiff's motion for summary judgment on February 27, 1984, and plaintiff's motion for reconsideration on March 13, 1984. This appeal followed.

## Statement of Facts

Harvey S. Mowery is a 60 year old man with a second grade education. He can neither read nor write. His past work has been mostly heavy construction and mining. He also worked for approximately one year as a night watchman. He last worked as a construction laborer on May 22, 1979. At the administrative hearing, appellant testified that he left his last employment for two reasons. He stated that because of various physical problems he had not been "pulling my part" (Tr. 40) for some time. On his last day of work, appellant testified that he was forced to stop working because of pain. Appellant was told he may have suffered a mild heart attack or stroke, although this was not medically confirmed. However, it was confirmed that the day after he stopped working, his blood pressure was 238/133.

Appellant is mentally impaired with verbal I.Q. of 66, performance I.Q. of 75, and full scale I.Q. of 69. He alleges that he suffers from hypertension with frequent headaches and dizziness, pain, kidney stones, hearing loss, chronic bronchitis, and mild degenerative joint disease. Gary C. Salk, Ph.D., a clinical psychologist, tested appellant on January 6, 1982. In addition to his low I.Q. scores, Dr. Salk stated appellant "seemed to have trouble understanding what I said to him. Part of this may be due to hearing loss, but most of it seemed to be due to his retardation." (Tr. 205, 208) Appellant complained of headaches, dizziness, lack of energy and insomnia. Dr. Salk found appellant's ability to

understand simple instructions "mildly restricted due to retardation." He found appellant's other activities and abilities were not significantly restricted. However, Dr. Salk emphasized that his opinion regarding appellant's ability to function in an ordinary work setting applied only to the construction and mining jobs held previously by appellant.

Daniel Davis, M.D., a social security consulting physician, stated after his examination that appellant "is not competent and I do not believe he is able to handle his finances, I do not believe he is able to follow instructions and so forth. (Tr. 202) His general evaluation was affected by appellant's inability to answer questions "with any degree of intelligence." Dr. Davis said: "It is impossible to obtain a satisfactory medical history from this man." (Tr. 200) Dr. Davis administered an electrocardigram that revealed a sinus tachycardia condition, which is a sinus rhythm greater than 100 beats per minute in an adult. Dr. Davis measured a ventricular rate of 118 beats per minute. Blood pressure was measured at 160/100, with a pulse rate of 110. Dr. Davis found no cardiac enlargement, thrills, or murmurs. He did find "some residual hearing deficit [in the] left ear." (Tr. 200–201) Appellant complained to Dr. Davis of pain from kidney stones, constant generalized headaches and vertigo, and stated that he blacked out at times.

Archer W. Bishop, Jr., M.D., an orthopedic specialist, in an examination on December 15, 1982, found that appellant "has limitation of all planes of motion in his back, particularly lateral bending and hyperextension.... [H]e had positive straight leg raising on the right and really had some hamstring tightness but no true radicular symptoms were elicited by straight leg raising, only pain in the back and soreness of the back of the right knee." (Tr. 211) Dr. Bishop's impression was that appellant has some limitation as a result of his pain and does experience soreness in his back, but that there were only minimal physical findings. Dr. Bishop ex-

pressed the opinion that appellant was limited to lifting no more than 25 pounds, carrying no more than 40 pounds, and should avoid repetitive bending and stooping. Dr. Bishop also stated: "He has limitation of hearing during this examination. I had to speak somewhat loudly and look directly at the patient." (Tr. 213)

Appellant was also examined by F.G. McNeeley, M.D., on December 18, 1980, and January 20, 1981, with blood pressure measurements of 190/110 and 200/120, respectively. Dr. McNeeley prescribed medication for appellant's high blood pressure. He also diagnosed arthritis involving multiple joints and deafness in the left ear.

Sarada Misra, M.D., examined appellant on March 19, 1981. Dr. Misra diagnosed hypertension, with a measured blood pressure of 170/94 on the date of examination. The doctor interpreted some irregularities in an EKG examination. Appellant complained to Dr. Misra of headaches and dizziness, chest pain, back pain and arthritic pain. Dr. Misra also found hearing loss in the left ear: "... he cannot hear well from a distance of six feet. I have to talk loudly for him to hear well. Obviously, he has some hearing loss, and I don't know whether he has had a complete hearing test before or not." (Tr. 122) Dr. Misra also diagnosed chronic bronchitis, based on a history of chronic cough and sinus problems, and an examination of the lungs which showed occasional moist sounds. Dr. Misra also further diagnosed hypertension with grade one retinopathy, indicating disease of the retina of the eye.

Progress notes from the Clinch River Medical and Emergency Center from May, 1979, to March, 1980, show treatment for high blood pressure with complaints of headaches and dizziness. X-rays taken by the Center show probable kidney stones in both kidneys. Repeated blood pressure measurements show fluctuations between 238/133 and 134/90. Despite continuous medication, the Center doctors repeatedly stated: "Hypertension out of control." (Tr. 90–100)

At the administrative hearing, appellant testified that he started working at age 12 and continued working until May 22, 1979, when he suffered a possible heart attack. As noted, his blood pressure on May 23, 1979, was measured at 238/128. He stated that if he tries to get out and work for 10 to 15 minutes, his lower back gives out and he gets dizzy. He said at times he blacks out. He also testified to severe and frequent headaches. He complained further of chest pains when he leans over, and swelling in his right hand.

Appellant testified that when he worked as a night watchman in a temporary capacity, he was assisted by his son and daughter because of difficulties with his eye sight and hearing. His job as a night watchman was 14 years ago.

The ALJ found that appellant does not have a severe impairment or a combination of impairments which are severe, and that because appellant had demonstrated his ability to function at his present level of retardation, his mental impairment is not severe.

An earlier ALJ's opinion, dated May 5, 1981, found that appellant was limited to light work, but because he formerly performed work as a night watchman which did not require more than light exertion, his impairment did not prevent him from performing his former work.

### Discussion

The Secretary's regulations provide a step-by-step review process for determining disability. 20 C.F.R. § 404.1520. If at any step in the review the Secretary makes a decision that the plaintiff is or is not disabled, review of the claim ceases. 20 C.F.R. § 404.1520(a). The sequential consideration of a disability claim proceeds as follows:

(1) Is claimant working? If not,

(2) Does claimant have a severe impairment? If he does,

(3) Does claimant have an impairment listed in appendix one to 20 C.F.R., part 404, subpart P (i.e., a "listed impairment")? If not,

(4) Does claimant's impairment prevent him from doing his past relevant work? If it does,

(5) Does claimant's impairment prevent him from doing any other work? (i.e., "the grid" is applied).

20 C.F.R. § 404.1520 [1] Because the ALJ found that appellant does not have a severe impairment, which finding was affirmed by the district court, review of appellant's claim was terminated at step two of this sequential evaluation.

Appellant challenges the Secretary's final decision on several grounds. First, appellant claims that the Secretary's nonsevere impairment regulations (20 C.F.R. §§ 404.1520(c) and 404.1521) are invalid because they conflict with 42 U.S.C. § 423(d)(1), (2) and (3). This is so, argues appellant, because those regulations permit the denial of disability benefits to individuals who have a medically determinable, physical or mental impairment which results in the inability to engage in substantial, gainful activity. Second, appellant claims that the Secretary did not evaluate the evidence in accordance with her own regulation, 20 C.F.R. § 404.1521. Third, appellant maintains that plaintiff's condition meets a listed impairment, namely, 20 C.F.R. part 404, subpart P, appendix 1, section 12.05(c), and as such is disabled within the meaning of the Social Security Act. Finally, appellant argues that the Secretary's finding that plaintiff does not suffer from a severe impairment is not supported by substantial evidence.

The pertinent regulation under which appellant's claim was denied is 20 C.F.R. § 404.1520(c):

*"You must have a severe impairment.* If you do not have any impairment(s) which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore,

not disabled. We will not consider your age, education, and work experience."

20 C.F.R. § 404.1520(c).

The definition of a non-severe impairment is as follows:

"(A) A non-severe impairment. An impairment is not severe if it does not significantly limit your physical or mental abilities to do basic work activities. (B) Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include— (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting."

20 C.F.R. § 404.1521.

This circuit recently upheld the validity of a threshold requirement that a claimant suffer from a severe impairment(s) as part of a sequential evaluation process to determine whether a claimant is disabled. *Gist v. HHS,* 736 F.2d 352, 357 (6th Cir.1984). However, in the case before us, we do not find substantial evidence to support the Secretary's finding that appellant does not suffer from a severe impairment.

■ "Substantial evidence means more than scintilla of evidence. It means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1053 (6th Cir.1983) (citations omitted). The reviewing court should not base its decision on a single piece of evidence and disregard other pertinent evidence in making a substantial evidence determination. *Hephner*

---

1. Regulations pertaining to disability insurance benefits are codified at 20 C.F.R. §§ 404.1501–404.1599. Regulations pertaining to supplemental security income benefits are codified at 20 C.F.R. §§ 416.901–416.998. Because supple-

mental security income regulations parallel those promulgated for use in disability insurance cases, all citations will be to the disability insurance regulations only.

*v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978).

█ In evaluating the evidence regarding appellant's impairments we note that in this circuit they must be viewed in combination. Disability may be established by a claimant suffering from a variety of medical problems no one of which might be sufficiently disabling to prevent substantial gainful employment, but when taken together have that result. *Hurst v. Schweiker,* 725 F.2d 53 (6th Cir.1984); *Allen v. Califano,* 613 F.2d 139 (6th Cir.1980). While both the ALJ and the district court gave lip service to this standard, an examination of their opinions reveals that plaintiff's impairments were in fact evaluated in piecemeal fashion.

We find it beyond dispute that appellant's impairments, when considered in combination, significantly limit his abilities to perform basic work activities. The uncontroverted medical evidence demonstrates that appellant is mentally impaired with I.Q. scores of 66 (verbal), 75 (performance), and 69 (full scale). Under the Secretary's own regulations, this impairment alone is considered *per se* disabling if an individual suffers any additional significant limitations. *See* 20 C.F.R. Part 404, subpart P, appendix 1, section 12.05(c). Yet, the ALJ found that because appellant has demonstrated the ability to function at his present level of retardation, his mental impairment is not severe. Similarly, the district court did not even consider appellant's mental impairment because appellant had worked with that impairment in the past. However, the Secretary's "non-severe" regulation does not define an impairment as non-severe if an individual has worked and functioned with the impairment.

█ Rather, the regulation states that an impairment is not severe if it does not significantly limit one's ability to do basic work activities. It does not logically follow from the fact that an individual has worked that such limitations do not exist. It simply establishes that there are at least some jobs the individual has been able to perform. For example, a paraplegic may suc-

cessfully adapt to his handicap and maintain full employment. Yet it can hardly be argued that the individual is not significantly limited in his ability to perform basic work activities. Prior work with an impairment may, of course, be a legitimate factor for consideration. However, it is not conclusive in the circumstances of this case. In sum, the fact that an individual has worked in the past cannot relieve the Secretary from the obligation of evaluating whether the individual may nevertheless have a severe impairment(s). This evaluation must be made according to the Secretary's own definition and criteria.

█ In the instant case, appellant's mental impairment and accompanying illiteracy do impose restrictions on his ability to do basic work activities. The January 6, 1982, report of Dr. Salk is the only medical evidence which really focuses on appellant's mental impairment. Dr. Salk noted that appellant is mildly restricted in his ability to understand simple instructions. More striking, however, is Dr. Salk's response to the question of whether appellant is restricted in his ability to function in an ordinary work setting. To this question, Dr. Salk checked that appellant is not significantly restricted, but added the following handwritten caveat: "Not at the work he has always done—construction and mining." (Tr. 208). Taken as a whole, Dr. Salk's response can only be interpreted as an opinion that appellant would be significantly restricted by his mental impairment in performing many other types of work. Further, Dr. Davis evaluated appellant on behalf of the Social Security Administration. Dr. Davis noted difficulty in obtaining medical history due to appellant's mental impairment. He concluded that appellant "is not competent," unable to handle his own finances, and "I do not believe that he is able to follow instructions and so forth." (Tr. 202) Finally, no evidence exists that plaintiff has ever performed anything other than unskilled work, nor that he would be capable of performing any other type of work.

The essential problem with the Secretary's analysis of the evidence pertinent to appellant's claim is that she fails to evaluate appellant's combined impairments, although giving lip service to this type of evaluation. For example, appellant's mental impairment and hearing problems are given short shrift, because they are long term problems, with which appellant has worked in the past. His other physical impairments are likewise passed over because they are part of the "normal aging process." However, no explicit consideration was given to whether appellant's retardation, in combination with his increasing physical problems, are equivalent to a listed, or otherwise severe impairment. The troublesome question is whether appellant, because of numerous physical problems, although not perhaps in themselves severe, is now precluded from performing the kind of unskilled, heavy manual work which he performed successfully in the past despite his retardation and hearing problem.

As noted, in addition to appellant's mental impairment, he suffers from numerous physical problems as evidenced by his subjective testimony and substantiated by the medical record. These other physical problems further restrict his ability to perform basic work activities. All of the examining medical experts, as well as the ALJ, noted appellant's hearing deficit, which deficit appellant testified required that his children assist him with his job as a night watchman in 1968–69. At the administrative hearing, the ALJ noted that appellant's hearing deficit would impair his performance of a job as a night watchman.

Further, the medical record demonstrates that appellant suffers from hypertension which, despite treatment, remains poorly controlled. This hypertension is the apparent cause of appellant's reported frequent headaches and dizziness. Additionally, Dr. Bishop's report limits appellant's ability to lift, carry, bend and stoop—in effect limiting appellant to light work as defined by the Secretary's regulations. See 20 C.F.R. § 404.1567(a)(b). Dr. Misra, who evaluated appellant on behalf of the Social Security Administration, also found that appellant was restricted from performing a full range of anything greater than light work.: William A. Reynolds, the ALJ who denied appellant's earlier claim for disability benefits, also found that appellant could perform only light or sedentary work. ALJ Reynolds further found that appellant cannot work around heights or machinery because of his dizziness.

Appellant also testified that he was limited in his activities by pain resulting from kidney stones and arthritis and by headaches and dizziness. The medical record does not controvert appellant's subjective complaints, but rather supports them. Neither of the ALJs who evaluated appellant's claims found his testimony on these points not credible.

To uphold the Secretary's disposition of appellant's claim and her analysis of the evidence would penalize appellant for having maintained employment throughout most of his adult life. Despite his mental impairment, appellant has in the past performed heavy, unskilled work. Now, due to multiple physical problems, appellant can no longer perform that type of work. His life-long mental impairment and long-term hearing deficit, in combination with his other physical problems, unquestionably impose significant restrictions on appellant's ability to perform work-related activities. To find otherwise is to distort the meaning of the word "significant" beyond any reasonable interpretation. Webster's Third New International Dictionary (1976) defines "significant" in pertinent parts: "having or likely to have influence or effect: deserving to be considered." A conclusion that restrictions on appellant's ability to perform work related activities are not significant is not reasonable in light of the evidence taken as a whole. See Hephner, 574 F.2d at 362. It is not reasonable to find otherwise by evaluating each impairment in isolation. Such an approach is not authorized by the Social Security Act, the case law nor the Secretary's own regulations.

■ The court finds it unnecessary to remand the case to the Secretary for further evaluation. In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of diability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking. *See, e.g., Lashley v. Secretary of Health and Human Services*, 708 F.2d at 1053–54. In the instant action, consideration of appellant's combined impairments brings him within the criteria for a listed impairment pursuant to 20 C.F.R., appendix 1, Rule 12.05 C.[2]

Appellant's lowest I.Q. score is less than 69. Because, according to the uncontroverted evidence, he is limited to light or sedentary work, as defined in the regulations (20 C.F.R. § 404.1567(a)(b)), he has additional and significant work related limitations of function. A claimant who meets the criteria for a listed impairment has established disability within the meaning of the Social Security Act. 20 C.F.R. § 404.1525(a).

Further, the court is satisfied that the record compels a finding of disability if the sequential evaluation were continued to its conclusion. The record is completely devoid of evidence that appellant could return to his former heavy construction labor. Further, substantial evidence does not support a conclusion that appellant could return to his former job as a night watchman, which apparently would qualify as "light work." First, it was appellant's uncontroverted testimony that he required his children's assistance to perform the night watchman job. The ALJ did not find appellant's testimony on this or any point not credible. As noted, every expert that examined appellant as well as the ALJ, substantiated that he suffers from a hearing deficit. Dr. Misra noted that appellant could not hear a conversational tone from a distance of six feet. Additionally, this experience as a night watchman was 14 years prior to the Secretary's decision. The Secretary places a 15-year limitation on those work experiences which will receive consideration in evaluating a disability claim. *See* 20 C.F.R. § 404.1565(a). To find that appellant can return to a job performed only one year more recent, considering the other evidence calling into question his ability to perform that job, is to place form before substance. For these reasons, the court cannot reasonably conclude that substantial evidence would support a finding that appellant could return to his former work.

Finally, if the sequential evaluation is pursued to its conclusion, the Secretary's regulations direct a finding of disabled. A claimant, who is closely approaching advanced age, limited to light work and is illiterate with unskilled prior work experience, is disabled according to 20 C.F.R. Appendix 2, Subpart P. Rule 202.09.

Accordingly, the decision of the Secretary as affirmed by the district court is reversed. The case is remanded to the district court for remand to the Secretary for an award of benefits.

WELLFORD, Circuit Judge, concurring in part; dissenting in part:

I concur in the court's finding that there is no substantial evidence to support the Secretary's finding of no severe impairment in this case. I must respectfully dissent, however, from the court's *de novo* resolution of the disability issue. I believe that the proper approach should be to remand the case to the Secretary for completion of the sequential analysis prescribed by the regulations. Only after that analysis is complete does this court have jurisdiction to determine whether the decision is supported by substantial evidence.

**2.** Rule 12.05 C states as follows:
"I.Q. of 60 to 69 inclusive (see 12.00b4) and a physical or other mental impairment imposing additional and significant work related limitations of function."

Pursuant to 12.00 B 4, the lowest of a claimant's I.Q. scores is used in applying Rule 12.05 C.

It is not this court's function to assess a record and come to a conclusion concerning disability in the first instance when the Secretary has not done so. This is especially true where, as here, the record could very well be incomplete. Because there was a finding of no severe impairment, there simply was no reason for the Secretary to develop evidence concerning the claimant's ability to perform light, medium or heavy work. Perhaps this explains why the record appears "completely devoid" in this regard. I accordingly would reverse the decision of the district court, with instructions to remand the case to the Secretary for completion of the sequential analysis.