61 F.3d 903
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Hayes JEFFRIES, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 94-1410.
 United States Court of Appeals, Sixth Circuit.
 July 25, 1995.
 
 Before MERRITT, Chief Judge, BROWN, and MARTIN, Circuit Judges.
 PER CURIAM.
 
 
 1
 The issue in this case is whether substantial evidence supports the Secretary of Health and Human Services' adoption of the Administrative Law Judge's finding that the plaintiff, Hayes Jeffries, could perform a restricted range of light work despite his alleged heart problems. Upon review, a Magistrate Judge recommended the Secretary be reversed. The district court disagreed, and affirmed the decision. For the following reasons, we AFFIRM the decision of the district court.
 
 I.
 
 2
 Hayes Jeffries was born in 1940 and has a seventh grade education. He worked as an iron pourer for twenty-four years, but in the summer of 1990, Jeffries, a diabetic, was diagnosed with pneumonia. He has been out of work ever since. Over time, this pneumonia apparently gave rise to a variety of heart problems, which, according to the plaintiff's testimony, had the following detrimental results: Shortness of breath; severe chest pains four or five times a week lasting several seconds; only partial use of his left arm;[1] and extreme weakness -- resulting in, among other things, an inability to climb stairs, work in his garden, walk more than two blocks, or carry groceries.
 
 
 3
 There is no question that Jeffries' heart problems were real. Between September of 1990 and March of 1991, a number of doctors diagnosed him with possible congestive heart failure, cardiomegaly (swelling of the heart), and dilated cardiomyopathy (a noninflammatory disease of the heart the cause of which is unknown). These doctors consistently stated that Jeffries should avoid working and continue to rest. No one denies that Jeffries had a disabling heart condition at one time. The question before the ALJ, however, was whether the plaintiff still had this condition when he applied for benefits and whether he was unable to work because of it.
 
 
 4
 Thus, despite the plaintiff's previous condition, the latest series of medical examinations show that Jeffries' heart condition has significantly improved. In July of 1991, Dr. Vita, his family physician, stated that Jeffries was "better than he was last fall." J.A. at 240. In August of 1991, Dr. Vita opined that Jeffries "seems to be doing quite well." J.A. at 240. In September and October of 1991, Dr. Vita noted that Jeffries' "cardiac rate and rhythm [were] still very regular." J.A. at 241. In April of 1991, however, Jeffries complained of "shortness of breath at times accompanied by wheezing." Dr. Vita noted
 
 
 5
 This is a new complaint and may have been promoted by his attorney who wants him to see Dr. Damuth [a heart specialist] for what appear to be medicolegal reasons. Hayes has apparently retained an attorney to represent him in a quest for disability retirement. Will schedule pulmonary function study, but unless this is abnormal, I have no intention of sending [Jeffries] to a pulmonologist for medicolegal reasons.
 
 
 6
 J.A. at 242. The pulmonary study apparently came up negative, for in November of 1991, Dr. Vita made clear that he would not refer Jeffries for purely medicolegal reasons because he would "not otherwise refer him for evaluation at this time." J.A. at 241.
 
 
 7
 In his latest medical examination on the record before this Court, on January 9, 1992, Dr. Vita stated that there was no sign of congestive heart failure and that his cardiomyopathy was the same as last year -- in that the muscle had not further deteriorated. Throughout this time, Jeffries' blood sugars have been erratic due to his diabetes. Dr. Vita has, however, been able to control it for the most part by altering the amount of insulin Jeffries was taking.
 
 
 8
 The ALJ, based on his review of the medical evidence, held that Jeffries was severely impaired in that he had diabetes and some form of heart disease (dilated cardiomyopathy). The ALJ further stated that Jeffries' testimony regarding the limits these illnesses placed on him -- the shortness of breath, chest pains, etc. -- was not fully supported by the objective medical evidence and was therefore not entirely credible. Thus, the ALJ ruled that Jeffries could perform light work (lifting up to twenty pounds occasionally) in a nonhazardous environment so long as he had a stand/sit option. Because these limitations would preclude Jeffries from returning to his job as an iron pourer, the ALJ asked the vocational expert at the hearing how many jobs in the economy were available to a person with Jeffries' physical limitations and limited education, and she replied that there were quite a few: Jeffries could work as a sorter, grater or hand packer. Accordingly, the ALJ held that Jeffries was not disabled within the meaning of the Act and denied him benefits. The Secretary adopted the ALJ's decision.
 
 
 9
 The magistrate judge disagreed, and recommended reversing the Secretary's decision. The district court rejected the Magistrate's recommendation, however, and, noting that the ALJ thoroughly discussed both the medical evidence and his reasons for not crediting the plaintiff's testimony, upheld the decision. The plaintiff appealed.
 
 II.
 
 10
 We will uphold the Secretary's findings so long as they are supported by substantial evidence. Substantial evidence "means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." Mowery v. Heckler, 771 F.2d 966, 970 (6th Cir. 1985). The issue in this case is whether substantial evidence supported the Secretary's decision that the plaintiff could perform light work in a nonhazardous environment with a stand/sit option.
 
 
 11
 We think it does. Though the plaintiff had a nasty bout of pneumonia and currently suffers from a mild form of heart disease, his family doctor's current view is that Jeffries' medical problems are for the most part behind him. In his last entry of record, Dr. Vita clearly indicated that the plaintiff's heart disease had stabilized and that his condition was not even serious enough to warrant a referral. Indeed, Dr. Vita himself seemed to doubt the veracity of some of the plaintiff's complaints, opining that they were encouraged by his lawyer. The Secretary could permissibly infer from this that the plaintiff could perform light work in a nonhazardous environment with a stand/sit option.
 
 III.
 
 12
 For the foregoing reasons, we AFFIRM the decision of the district court. Judge Martin would reverse and award benefits.
 
 
 
 [1]
 The problems with his left arm may have been caused by a torn rotor cuff