**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0677n.06
Filed: November 5, 2008

**07-3168**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

KAREN GERMANY-JOHNSON,      )
                            )
    Plaintiff-Appellant,    )
                            )
v.                          )  ON APPEAL FROM THE UNITED
                            )  STATES DISTRICT COURT FOR THE
COMMISSIONER OF SOCIAL      )  NORTHERN DISTRICT OF OHIO
SECURITY,                   )
                            )
    Defendant-Appellee.     )

Before: DAUGHTREY and GILMAN, Circuit Judges; EDMUNDS,[*] District Judge.

PER CURIAM. In this appeal challenging the denial of Social Security disability benefits, claimant Karen Germany-Johnson assigns as error the "second step" ruling by the administrative law judge (ALJ) that her medical condition was not severe enough to advance the sequential evaluation process, as well as the ALJ's failure to give appropriate deference to the opinion of her treating physician. Denial of benefits was affirmed by the Appeals Council and by the district court. We conclude that the ALJ erred as a legal matter by (1) applying the wrong standard of review at the second step of the five-step evaluation process and (2) failing to comply with the Social Security Administration's rule

---

[*]The Hon. Nancy G. Edmunds, United States District Judge for the Eastern District of Michigan, sitting by designation.

that a decision denying benefits must include specific reasons for rejecting the opinion of a treating physician, a requirement reiterated in our opinion in *Wilson v. Commissioner of Social Security*, 378 F.3d 541 (6th Cir. 2004). As a result, this case must be remanded to the ALJ for further consideration.

## I. FACTUAL AND PROCEDURAL BACKGROUND

After working steadily from 1969 to 1996, with a four-year break in the early 1980s to start a family, Germany-Johnson was involved in an automobile accident in 1996 that apparently caused neck and back pain, which in turn exacerbated nerve damage she had experienced as the result of three surgeries on her lower spine dating back to 1972. Unable to maintain full-time work, she held several part-time or short-term jobs over the next six years, while she was in the care of her primary physician, Dr. Mark Meacham. In 1998, she was seen by an orthopedic specialist, Dr. John Collis, who diagnosed her with chronic shoulder and neck pain due to arthritic disc disease and severe pain due to C5 disc herniation and extrusion. Her efforts at physical therapy resulted in the onset of vertigo, which was serious enough to require hospitalization. In 2000, Germany-Johnson developed an ulcer due to taking medication for her neck and low back pain. Two years later, Dr. Meacham referred Germany-Johnson to Dr. Raynor, a rheumatologist, who found that she was "likely" suffering from fibromyalgia.

In November 2002, the claimant was also referred by Dr. Meacham to Dr. Gardziola, a neurologist. Dr. Gardziola recognized that she was the victim of chronic pain but said

that he could not easily identify its source because it did not fit a neuropathic pattern. He nevertheless noted that Germany-Johnson had a long history of muscle pain and spasm.

Germany-Johnson applied for disability benefits in 2002. In December of that year, she was seen by Dr. Alok K. Bhaiji, a consulting physician chosen by the Social Security Administration. He found that the claimant had vertigo and herniated discs and ordered an MRI. It revealed Germany-Johnson had annular bulging at the L4-L5 area and left-sided disc herniation at L5-S1. Another MRI taken of the cervical spine revealed bony degenerative changes in her neck. Other diagnoses included spondylosis and lordotic reversal, scoliosis with pelvic tilt, and a peptic ulcer caused by the various pain medications that Germany-Johnson was taking.

In February 2003, Dr. Meacham listed diagnoses of myositis, cervical syndrome, and myalgia and noted that the claimant's pain was at a level six out of ten. That month Dr. Gardziola found that the claimant's condition remained unchanged and that she continued to have pain and weakness. By the end of February, Dr. Meacham had written a letter to the claimant explaining that he had treated her for several years and that he had "NO doubts that the combination of medical diagnoses you have contribute to significant difficulty with maintaining gainful employment." A year later, on January 2, 2004, Dr. Meacham wrote another letter, noting that the claimant had been his patient since the mid-1990's and had undergone exhaustive evaluations of her physical symptoms by many specialists, without any resolution of her neck pain and fibromyalgia symptoms. He

concluded that Germany-Johnson was unable to sustain work and that her symptoms were debilitating.

In applying for disability benefits in 2002, Germany-Johnson described nerve pain in her back and neck, painful muscle spasms, and numbness in her coccyx, saying that the pain made it difficult to perform normal tasks like walking, sitting, standing, doing laundry, lifting cookware, and grocery shopping, among others. She also said that she needed help from her family in preparing meals and house-cleaning and that she was largely housebound. Her application was denied initially and also upon reconsideration.

Germany-Johnson then requested a hearing before an administrative law judge, at which she appeared with counsel and testified. A medical expert and a vocational expert also testified. The ALJ determined that Germany-Johnson was not disabled, finding that she "d[id] not have any impairment or impairments [that] significantly limit her ability to perform basic work-related activities" and, therefore, "d[id] not have a severe impairment." The Appeals Council denied the claimant's request for review and a magistrate judge, sitting by agreement as the district court, found that there was substantial evidence to support the decision of the administrative law judge and upheld that decision.

## II. **DISCUSSION**

**A. Standard of Review**

We exercise *de novo* review of district court decisions in Social Security cases. *See Valley v. Comm'r of Soc. Sec.*, 427 F.3d 388, 390 (6th Cir. 2005). The underlying findings of the administrative law judge are reviewed for substantial supporting evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Under applicable Social Security regulations, the merit of a disability claim is determined by following a sequential five-step analysis. *See* 20 C.F.R. § 404.1520. The ALJ must determine, first, whether the claimant is working; second, whether the alleged impairment is severe; third, whether the impairment meets or equals a listed impairment and hence has a certain level of severity; fourth, whether the claimant can still do past relevant work; and, finally, when considering the claimant's age, education, work experience, and residual functional capacity, whether the claimant can do other work. *See* 20 C.F.R. § 404.1520(a)(4). The burden is on the claimant to satisfy the first four steps. *See Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005). In this case, the ALJ followed the required evaluation only through the second step, finding that the claimant was not disabled because her impairments were not "severe."

**B.  Severity of Impairment**

The step-two severity determination is phrased in the negative: if a claimant does not have a severe medically determinable physical or mental impairment, for at least twelve months, or a combination of impairments that is severe, the claimant is not disabled. 20 C.F.R. § 404.1520. In this circuit, the claimant's burden of proof at step two "has been construed as a *de minimis* hurdle in the disability determination process . . . [A]n impairment can be considered *not* severe only if it is a slight abnormality that *minimally* affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (emphasis added) (citing *Farris v. Sec'y of Health and Human Serv.*, 773 F.2d 85, 89-90 (6th Cir. 1985)). *See also Bowen v. Yuckert*, 482 U.S. 137, 158-59 (1987) ("Only those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits without undertaking this vocational analysis.") (O'Connor, J., concurring). Furthermore, step-two severity review is used primarily to "screen out totally groundless claims." *Farris*, 773 F.2d at 89.

Clearly, Germany-Johnson's impairments were not groundless under 20 C.F.R. § 404.1521, because the record establishes that, without question, they interfered with her basic work activities. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs" such as "(1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting." 20

C.F.R. § 404.1521.  The record reveals to our satisfaction that the claimant's back and neck pain and fibromyalgia limited her ability to work.  Beyond the personal anecdotes from Germany-Johnson listed above, Dr. Bhaiji found from her symptoms that she could have difficulty walking and lifting, and Dr. Meacham, the claimant's treating physician, described her as totally disabled from working.

The question in this appeal thus becomes whether there is also substantial evidence to support the opposite conclusion – that the claimant's impairments are so slight that they have little, if any, impact on her work capacity.  If substantial evidence supports the decision of the administrative law judge, "this Court will defer to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Longworth*, 402 F.3d at 595 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).  *See also Cutlip v. Sec'y of Health and Human Serv.*, 25 F.3d 284, 286 (6th Cir. 1994) ("If the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing  court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion, *see Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).").

In this circuit, "substantial evidence means more than a scintilla of evidence.  It means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Mowery v. Heckler*, 771 F.2d 966, 970 (6th Cir. 1985) (quoting *Lashley v.*

*Sec'y of Health and Human Serv.*, 708 F.2d 1048, 1053 (6th Cir. 1983). Moreover, "[d]isability may be established by a claimant suffering from a variety of medical problems no one of which might be sufficiently disabling to prevent substantial gainful employment, but when taken together have that result." *Mowery*, 771 F.2d at 971. As in *Mowery*, although the ALJ and the district court gave what can best be described as "lip service" to this principle, we conclude that both courts came to the wrong conclusion with regard to this claimant. *Id.*

The ALJ acknowledged in his order that "the record indicates claimant has diagnoses of fibromyalgia with degenerative disc disease of the cervical and lumbar spines." He concluded, however, that the record also "establishes that these impairments are not severe impairments," based upon what he identified as the claimant's "normal" characteristics. For example, after describing diagnoses of annular bulging, disc herniation, cervical disc disease, and bony degeneration, the ALJ pointed to the "essentially normal" EMG and nerve conduction. However, he neglected to mention that the report also suggested that further evaluation by MRI was dictated by "markedly prolonged peroneal and posterior tibial F waves." The administrative law judge next alluded to physical examinations that have "noted normal range of motion of the cervical spine, lumbar spine, as well as normal range of motion of the upper and lower extremities." But, the source of these findings, although not cited, was the physical examination conducted by Dr. Bhaiji, the consulting physician hired by the Social Security Administration, who also noted the claimant could have difficulty with walking and lifting,

two basic work activities under 20 C.F.R. § 404.1521, and who recommended a further neurological evaluation of Germany-Johnson.

Pointing to the claimant's "normal sensation, normal reflexes, and normal muscle strength. . . [and also] normal gait," the ALJ concluded that "while the claimant alleges that she is disabled by her pain[,] her complaints are not supported by the overall objective medical evidence in the record which is normal." However, one of the bases for these "normal" findings was the report of Dr. Gardziola that also described the claimant's "long history of muscle pain and spasm . . . [from] pinching in her neck, which creates a chain reaction to pinching and pain in her buttock, legs, feet, shoulders, and neck."

Although the administrative law judge focused on what he perceived to be "normal" findings by the medical experts, the caveats provided by those same doctors indicate that – taking the record as a whole and including both the doctors who provided normal findings *and* those who found the claimant had a severe disability – there is not substantial evidence to support the administrative law judge's finding that the claimant's impairments are not "severe," at least for purposes of step-two analysis. *See Hurst v. Sec'y of Health and Human Serv.*, 753 F.2d 517, 519 (6th Cir. 1985) ("failure to consider the record as a whole undermines the Secretary's conclusion"). Indeed, in our judgment the evidence in the record that can be considered to establish Germany-Johnson's condition as "normal" is minimal and is offset by the not-normal findings in the same reports.

The administrative law judge also based his finding that the claimant's disability is not severe on the nature of her prescribed medications, noting that they are commonly used to treat mild symptoms and concluded from that fact "that the claimant [h]as an impairment which is so slight, it would not be expected to interfere with her ability to work or a non-severe impairment." But this observation wholly overlooks evidence in the record that Germany-Johnson took these medications in such large doses that she developed an ulcer and had to stop taking them. Indeed, Dr. Cain found the claimant had an ulcer due to "anti-inflammatory drug use." Moreover, as noted by her treating physician, Dr. Meacham, the prescription drugs Vioxx and Celebrex were ineffective to control Germany-Johnson's pain symptoms, as was Tylenol. Although the use of relatively mild medications may be taken to indicate that the claimant does not suffer from "severe disabling pain," *Maher v. Sec'y of Health and Human Serv.*, 898 F.2d 1106, 1109 (6th Cir. 1989) (citing *Kimbrough v. Sec'y of Health and Human Serv.*, 801 F.2d 794, 797 (6th Cir. 1986)), the Tenth Circuit has held that when the claimant suffers from the side effects of using pain relievers, an ALJ cannot rely on the non-use of those same pain relievers to evaluate the claimant's impairment. *See Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987) ("Unrefuted testimony by both [doctors] indicated that anti-inflammatory and anti-pain medication appropriate for [the claimant's] degenerative arthritic condition was contraindicated because of the side effects of stomach irritation. Although pain abatement would enhance [the claimant's] ability to perform sedentary work, the side effects would interfere with restoration of his ability to work.").

The ALJ also focused on the testimony of Dr. Hershel Goren, one of the agency's medical experts, but Dr. Goren examined only the claimant's medical file, not the claimant herself, in preparation for testimony regarding the validity of the other expert's diagnoses, the degree of the claimant's dysfunction, and both her mental and her physical capacities. Dr. Goren concluded that the claimant's symptoms did not equal any Social Security Administration listings, that she would not be impaired in a work setting, and that she would have no restrictions on her functional capacity. He based his conclusions on his determination that her symptoms did not necessarily correlate with any of the MRI abnormalities and, therefore, that those abnormalities thus could not be considered objective findings.

Our review convinces us that, even after extending appropriate deference to the ALJ's decision, the denial of relief at step two was not supported by substantial evidence. First, the opinion of a non-examining physician such as Dr. Goren should be given relatively little weight "if it is contrary to the opinion of the claimant's treating physician." *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987) ("[t]he testimony of [non-examining physician] cannot provide a sufficient basis for rejecting the opinions of plaintiff's treating physicians . . . ") (citing *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985). *See also Cohen v. Sec'y Health and Human Serv.*, 964 F.2d 524, 528 (6th Cir. 1992) ("medical opinions and diagnoses of treating physicians are entitled to great weight, and if uncontradicted, are entitled to complete deference") (citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)). In this case, Dr. Goren's opinion contradicts that of the claimant's

treating physician, Dr. Meacham, whose opinion was largely, if not completely, overlooked by both the ALJ and the district court.

In giving controlling weight to Dr. Goren's opinion and to only selective portions of reports by the agency's other consulting physician, Dr. Bhaiji, and the claimant's secondary physician, Dr. Gardziola, the ALJ failed to give effect to the agency's "treating source" regulation, 20 C.F.R. § 404.1527(d)(2). That provision requires an administrative law judge to give more weight to opinions from treating sources if the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." Moreover, the regulation also requires the judge to state "good" reasons for the weight given the opinion of a claimant's treating physician. 20 C.F.R. § 404.1527(d)(2). Hence, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96-2p 1996 WL 374188 at *5 (1996). *See also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

The substantive arm of the regulation, referred to in this circuit as the "treating physician rule," creates "a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). Even if the treating

physician's opinion is not given controlling weight, the administrative law judge must still determine how much weight is appropriate for the opinion, considering: (1) the length, frequency, nature, and extent of the treatment relationship; (2) consistency of the physician's conclusions and the evidence to support them; and (3) the specialization of the treating physician. *See id.*

Once the weight to be given the opinion is determined, the procedural arm of the regulation requires the ALJ to "provide good reasons for discounting treating physicians' opinions, reasons that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (internal quotation marks omitted). These reasons are particularly important when the treating physician has diagnosed the claimant as disabled. *See id.* As we held in *Wilson*, "A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely." 378 F.3d at 546. Ultimately, "a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

Here, the only evidence that the ALJ cited to refute the severity of the claimant's diagnoses was the "normal" findings of two non-treating doctors. But, the judge was selective in parsing the various medical reports and simply failed altogether to address the findings of Dr. Meacham, the physician who had been treating the claimant for almost ten years, beyond merely setting them out in narrative fashion. He apparently did not give any weight to them, nor did he explain why he had discounted the treating physician's opinion that the claimant was disabled from working, beyond saying that "her complaints are not supported by the overall objective medical evidence in the record which is normal." The record thus establishes as a matter of law that the case must be remanded to the administrative law court for further consideration. *See Wilson*, 378 F.3d at 544.

On remand, the administrative law judge is further directed to evaluate Germany-Johnson's claims under the standard appropriate for claims of fibromyalgia. In general, an "impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 416.908. Fibromyalgia, however, can be confirmed as a severe impairment without objective testing. *See Rogers*, 486 F.3d at 243 ("On at least one occasion, we have recognized that fibromyalgia can be a severe impairment that, unlike medical conditions that can be confirmed by objective testing, fibromylagia patients present no objectively alarming signs."). In fact, persons suffering from fibromyalgia "manifest

normal muscle strength and neurological reactions and have a full range of motion."
*Preston v. Sec'y of Health and Human Serv.*, 854 F.2d 815, 820 (6th Cir. 1988). As a
result, we have previously concluded that "[t]here are no objective tests which can
conclusively confirm the disease." *Id.* at 818. Instead, the standard for diagnosing
fibromyalgia in this circuit involves testing a series of focal points for tenderness and ruling
out other possible conditions through objective medical and clinical trials. *See Rogers*, 486
F.3d at 244.

As in *Rogers*, the ALJ in this case did not discuss, let alone apply, the correct
standard for assessing a diagnosis of fibromyalgia in his decision, instead emphasizing and
basing his denial of benefits on "normal" physical findings, *i.e.,* normal muscle strength,
normal range of motion, and normal gait. But for obvious reasons, these findings bore little
relevance to Dr. Meacham's diagnosis of fibromyalgia. *See Rogers*, 486 F.3d at 245 ("in
light of the unique evidentiary difficulties associated with the diagnosis and treatment of
fibromyalgia, opinions that focus solely upon objective evidence are not particularly
relevant").

Finally, we note the Commissioner's contention that remanding this case for further
consideration would be futile if, as the Commissioner insists, the claimant will fail at a later
point in the sequential determination of disability. However, we have held that it is
"inappropriate" to speculate concerning the ultimate outcome when an administrative law
judge stopped his or her evaluation at a premature step in the sequential analysis, because

the remaining steps are for the administrative law judge to consider in the first instance. *See Farris*, 773 F.2d at 90 ("Since the ALJ stopped at the severity stage in the evaluation process and did not reach the question of whether Mrs. Farris'[s] disorder met or exceeded the severity of a listed impairment, it is inappropriate for us to consider these questions at this juncture in the case, although they must be determined by the ALJ on remand.").

## III.  <u>CONCLUSION</u>

For the reasons set out above, we REVERSE the judgment of the district court and REMAND this case to the administrative law court for further consideration of the claimant's application for disability benefits.

**RONALD LEE GILMAN, Circuit Judge, concurring.** I concur in the majority opinion, but write separately because I disagree with the majority's conclusion that the record lacks substantial evidence to support the ALJ's finding that Germany-Johnson is not disabled. Nevertheless, I agree that the ALJ erred in failing to explain the diminished weight that he attributed to the opinion of Germany-Johnson's treating physician, and would therefore remand the case for further consideration, but only on this narrower ground.

I agree with the majority that the record is replete with evidence that Germany-Johnson has impairments. Indeed, this conclusion is not disputed by any of the physicians who either examined Germany-Johnson or reviewed her file, including the Social Security Administration's (SSA's) own Dr. Goren. Even the ALJ acknowledged that Germany-Johnson suffers from the impairments of "fibromyalgia with degenerative disc disease of the cervical and lumbar spines." (JA 23) But he ultimately concluded that "these impairments are not severe impairments." (JA 23)

The majority concludes that "the evidence that can be considered to establish Germany-Johnson's condition as 'normal' is minimal and is largely rebutted by the not-normal findings in the same reports." (Maj. op. 9) Yet the medical documents on record show that the various tests conducted on Germany-Johnson repeatedly and consistently showed "normal" results. And where abnormalities were identified, the record lacks any information as to their severity.

Dr. Raynor, for example, as the claimant's treating rheumatologist, found that her gait and muscle strength were "normal" and that her physical exam was "unremarkable." (JA 109)  Another examining physician, Dr. Bhaji, found, among other things, that her reflexes and the range of motion in her upper and lower extremities were "normal." (JA 118)  He also concluded that she would have no difficulty with work-related activities such as sitting, standing, and carrying objects, but that she may have difficulty walking and lifting.  (JA 119)  Dr. Gardziola, Germany-Johnson's treating neurologist, documented the fact that she experienced pinching and numbness, but said that she exhibited full strength and that he could not easily identify her chronic pain.  He did not come to any further conclusions about the severity of her impairments, and recommended that she undergo MRI and nerve-conduction tests.  (JA 141)  Dr. Burdette, who did the nerve-conduction studies, concluded that the results were "within the broad limits of normal for a patient of this age." (JA 132)  The radiologist, Dr. Rosenfeld, ran a series of MRI tests and found the results to be almost entirely "normal," with the exception of a herniated disc, "annular bulging," "diffuse distribution," and "bony degenerative changes."  (JA 125-29)  He did not, however, characterize the effect or severity of these problems.  (JA 125-29)  And Dr. Goren, the SSA's medical expert, testified that Germany-Johnson did not have "objective findings to support her complaints."  (JA 23)

Although "not-normal" findings in Germany-Johnson's medical record might in fact establish that she has impairments, this court has held that the existence of such impairments does not alone lead to the conclusion that they are (or are not) severe.  *See*

*Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("[T]he mere diagnosis of [an impairment], of course, says nothing about the severity of the condition."). Where, as here, a claimant is found to have impairments, but the tests come back either negative or in the normal range, I do not believe that the record supports a finding that the impairments are severe. *See, e.g., Crady v. Sec'y of Health & Human Servs.*, 835 F.2d 617, 620-21 (6th Cir. 1987) (holding that the ALJ was justified in determining that the claimant's complained-of knee condition was "not a severe impairment" where post-operative tests showed no restriction of motion and "only minor degenerative joint changes" in that knee, and x-ray results "were essentially within normal limits"). I believe that the test results provide the most reliable and objective basis for determining the degree to which any of Germany-Johnson's impairments impacts the claimant's physical abilities or activities. And the test results in this case indicate that she has "normal" function, despite her impairments.

To be sure, Dr. Meacham, Germany-Johnson's treating physician, sent a letter to her in 2003 stating that he had no doubts that she would face "significant difficulty with maintaining gainful employment," and sent her another letter in 2004 stating that her symptoms were "debilitating." (JA 145) The SSA's so-called "treating source" regulation, 20 C.F.R. § 404.1527(d)(2), "requires an administrative law judge to give more weight to opinions from treating sources *if the treating physician's opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'*" (Maj. op. 12 (emphasis added)). Thus the opinion of a treating physician is generally given greater weight than that of other examining physicians. *Allen v. Califano*, 613 F.2d 139, 145 (6th

Cir. 1980). But "such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence." *Bogle v. Sullivan*, 998 F.2d 342, 347-348 (6th Cir. 1993). An ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (citation omitted).

The medical documentation that Dr. Meacham submitted provides little, if any, support for his conclusions. His record of each of Germany-Johnson's office visits consists only of one or two pages of not-very-detailed notes in which he documents her complaints *as she described her symptoms to him*, and simply lists his diagnoses without elaboration. But he makes no mention of any method or test he used to diagnose her symptoms, or to independently confirm or objectively evaluate the severity of those symptoms. (JA 145-56, 172-75, 183) In one case, he explicitly noted "no clinical evidence on exam." (JA 149) Nevertheless, the ALJ failed to comply with the requirement that he "always give good reasons in [his] . . . decision for the weight [he gives to the] treating source's opinion." 20 C.F.R. § 404.1527(d)(2). This alone is grounds for reversal. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2) and holding that "[a]lthough substantial evidence otherwise supports the decision of the Commissioner in this case, reversal is required because the agency failed to follow its own procedural regulation" that mandates a discussion of the weight given to the treating physician's opinion).

Germany-Johnson ultimately bears the burden of proving the severity of her impairments. *See Murphy v. Sec'y of Health & Human Servs.*, 801 F.2d 182, 185 (6th Cir. 1986). Although I am sympathetic to her situation, I cannot say on the basis of this record that she has met that burden, or that the ALJ erred in finding that her impairments are not severe. But because the ALJ failed to state his reasons for the decreased weight that he attributed to the opinion of Germany-Johnson's treating physician, I concur in the majority opinion's decision to reverse the district court's judgment and remand the case to the ALJ for further consideration.